121 T.C. No. 5


UNITED STATES TAX COURT


MARIANNE HOPKINS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 363-01.                    Filed July 29, 2003.


    P and H filed joint returns for 1982, 1983, 1984,
1988, and 1989.  Adjustments to partnership deductions
and NOL deductions resulted in tax deficiencies for
1982, 1983, and 1984.  The partnership deductions are
attributable to H's partnership.  The NOL deductions
are attributable to P's property.  P and H reported
taxes due on their joint returns for 1988 and 1989;
however, they failed to pay those amounts.  After P and
H were separated, P filed a request for relief under
sec. 6015, I.R.C., with respect to her joint and
several tax liabilities for 1982, 1983, 1984, 1988, and
1989.

    <u>Held</u>:  P is not entitled to relief under sec.
6015(b), I.R.C., for 1982, 1983, and 1984 because the
NOL deductions are P's tax items and because she has
not established that in signing the returns she had no
reason to know that there were understatements
attributable to H's partnership deductions.

Held, further, P is entitled to relief under sec. 6015(c), I.R.C., to the extent the deficiencies for 1982, 1983, and 1984 are allocable to H under sec. 6015(d), I.R.C.  For purposes of applying sec. 6015(d), I.R.C., items are generally allocated as if P and H had filed separate returns.  Thus, deficiencies resulting from H's erroneous partnership deductions are generally allocated to H, and deficiencies resulting from P's erroneous NOL deductions are generally allocable to P. See sec. 6015(d)(3)(A), I.R.C.  However, pursuant to sec. 6015(d)(3)(B), I.R.C., an item otherwise allocable to an individual shall be allocated to the other individual filing the joint return to the extent the item gave rise to a tax benefit to the other individual.  As a result, P is relieved of liability for deficiencies attributable to H's erroneous partnership deductions except for the portion, if any, that offsets her income.  Likewise, P is liable for deficiencies attributable to her erroneous NOL deductions to the extent they offset her income, and she is relieved of liability for any remaining portion of the deficiencies attributable to the NOL that offsets H's income.

Held, further, P is not entitled to relief under sec. 6015(f), I.R.C., for the remaining portions of the deficiencies for 1982, 1983, and 1984.

Held, further, P is not entitled to relief under sec. 6015(b), (c), or (f), I.R.C., for the underpayments of tax in 1988 and 1989.


Sandra G. Scott, for petitioner.

Thomas M. Rohall, for respondent.


RUWE, Judge:  The issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(b), (c), or (f)[1] for her 1982, 1983, 1984, 1988, and

_____

[1]Unless otherwise indicated, all section references are to
(continued...)

1989 income tax liabilities. Those tax liabilities, which include deficiencies, interest, penalties, and underpayments, are as follows:

| Year | Liability |
|------|-----------|
| 1982 | $216,040.49 |
| 1983 | 154,412.96 |
| 1984 | 21,181.26 |
| 1988 | 2,496.38 |
| 1989 | 3,598.37 |

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioner resided in Kentfield, California.

Petitioner was born in Germany. While in Germany, petitioner completed the equivalent of a ninth-grade education. She has never taken any business or tax classes. Her native language is not English.

In February 1967, petitioner married Donald K. Hopkins. Petitioner and Mr. Hopkins were separated on February 1, 1989, and subsequently divorced. Mr. Hopkins was an airline pilot during the relevant periods, and he earned a substantial salary. Petitioner did not work outside her home during her marriage.

---

[1](...continued)
the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner has resided in a house located at 111 Diablo Drive, Kentfield, California, since 1967. Petitioner was the sole owner of the house during the tax years at issue.[2]

Petitioner filed joint income tax returns with Mr. Hopkins from 1978 to 1997.[3] They reported Mr. Hopkins's wages of $141,683, $166,906, and $162,654 as income on their joint returns for 1982, 1983, and 1984, respectively. They reported income from a State tax refund of $5,039 on their joint return for 1982. The refund matches the amount of State income taxes withheld from Mr. Hopkins's wages for 1981. They reported interest income of $8,148, $5,192, and $2,107 on their joint returns for 1982, 1983, and 1984, respectively. The evidence does not show who owned the principal that generated the interest. Petitioner and Mr. Hopkins reported ordinary income of $68,452 from San Sierra Investment #11 on their joint return for 1983. The evidence does not show who owned the partnership interest. They reported ordinary income of $2,751 from ECC Leveraged Drilling on their joint return for 1984. The evidence does not show who owned the

---

[2]The real property located at 111 Diablo Drive consists of two parcels. Petitioner and Mr. Hopkins acquired parcel 1 in 1967. On Apr. 2, 1973, Mr. Hopkins quitclaimed his interest in parcel 1, which included the house, to petitioner. Petitioner is still the sole owner of parcel 1. Parcel 2 has been held by petitioner and Mr. Hopkins as joint tenants since it was acquired in 1973.

[3]On the joint returns for 1980 through 1984, petitioner's occupation is listed as "investor".

interest in this entity. They reported a $951 section 1231 gain from Shelter Associates III on their joint return for 1984.[4]

Petitioner and Mr. Hopkins's reported income for 1980 through 1984 was significantly offset by partnership losses,[5] a casualty loss, and net operating loss (NOL) carrybacks and carryforwards that they claimed as deductions.

Petitioner and Mr. Hopkins claimed deductions on their joint returns for 1982 and 1983 which related to Far West Drilling partnership.[6] The Far West Drilling partnership deductions were attributable to Mr. Hopkins's investment in that partnership. The deductions related to the Far West Drilling partnership were erroneous. Petitioner and Mr. Hopkins signed a closing agreement under section 7121 in which they agreed to adjustments to the Far West Drilling partnership deductions. In a separate opinion, Hopkins v. Commissioner, 120 T.C. ___ (2003), we held that

---

[4]A Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., for 1984 reports petitioner as a partner in Shelter Associates III.

[5]Petitioner and Mr. Hopkins deducted substantial losses from various partnership activities on their 1980, 1982, and 1983 joint income tax returns: The first page of each of the 1980, 1982, and 1983 joint returns showed losses on Schedule E, Supplemental Income and Loss, of $119,408, $88,383, and $26,844, respectively. The partnership activities included Circle T Racing Stable, Shelter Associates III, San Sierra Investment #11, ECC Leveraged Drilling #3, and Far West Drilling.

[6]They claimed a loss deduction of $83,402 on their joint return for 1982. They claimed a loss deduction of $91,086 and a depletion deduction of $2,126 on their joint return for 1983.

petitioner is not precluded by the closing agreement, which was entered into before the enactment of section 6015, or the doctrines of res judicata and collateral estoppel from claiming relief under section 6015 with respect to the tax liabilities attributable to the disallowance of deductions related to the Far West Drilling partnership.

Petitioner and Mr. Hopkins reported a casualty loss of $280,661 on their joint return for 1981. The casualty loss was attributable to a mudslide that destroyed petitioner's house. Petitioner and Mr. Hopkins erroneously claimed NOL carryforward deductions for 1982 and 1984 which were attributable to the casualty loss. Petitioner agrees that the erroneous 1982 and 1984 NOL carryforward deductions are her items.

Respondent assessed deficiencies in petitioner and Mr. Hopkins's taxes for 1982, 1983, and 1984. Those deficiencies were attributable to the disallowance of the Far West Drilling partnership deductions and the disallowance of the NOL carryforward deductions that petitioner and Mr. Hopkins claimed on their joint returns for 1982, 1983, and 1984.[7]

---

[7]Petitioner and Mr. Hopkins's tax liability for 1982 is attributable to adjustments to the NOL carryforward deduction resulting from the casualty loss and the Far West Drilling partnership deduction for that year. The tax liability for 1983 is attributable solely to the Far West Drilling adjustments for that year. The tax liability for 1984 arises solely from the disallowance of the NOL carryforward deduction for that year. Those deficiencies are not in issue.

Petitioner and Mr. Hopkins reported, but did not pay, taxes due of $1,571 and $3,326 on their joint income tax returns for 1988 and 1989, respectively. Respondent assessed those amounts.

On May 24, 1999, petitioner filed with respondent a Form 8857, Request for Innocent Spouse Relief, with respect to her 1982, 1983, 1984, 1988, and 1989 joint tax liabilities. On January 8, 2001, petitioner filed a petition for relief from joint and several liability with this Court. At the time the petition was filed, respondent had not made a determination with respect to petitioner's request.[8]

OPINION

A. Tax Liabilities for 1982, 1983, and 1984

Petitioner claims that she is entitled to relief from joint and several liability under section 6015(b), (c), or (f) for the tax liabilities attributable to the disallowance of the Far West Drilling partnership deductions and the disallowance of the NOL carryforward deductions for 1982, 1983, and 1984.

---

[8]Pursuant to sec. 6015(e)(1)(A), a petition may be filed with this Court after the passage of 6 months from the date the taxpayer elected sec. 6015 relief if the Commissioner has made no determination regarding the election.

1. Section 6015(b)

To qualify for relief under section 6015(b)(1), the electing spouse must establish, inter alia, that: (A) A joint return has been made for a taxable year; (B) there is an understatement of tax on the return which is attributable to the erroneous items of the nonelecting spouse; (C) in signing the return, the electing spouse did not know, and had no reason to know, that there was such an understatement; and (D) taking into account all the facts and circumstances, it is inequitable to hold the electing spouse liable for the deficiency in tax for the taxable year attributable to the understatement. See Alt v. Commissioner, 119 T.C. 306, 313 (2002).

Petitioner is not entitled to relief under section 6015(b) with respect to the understatements attributable to the disallowed NOL carryforward deductions. Those items are attributable to the residence at 111 Diablo Drive, which she owned. Petitioner agrees that the casualty loss and the NOL carryforward deductions are her tax items for purposes of section 6015(b). Petitioner cannot be granted relief under section 6015(b) for understatements that are attributable to her own erroneous items. See sec. 6015(b)(1).

The Far West Drilling partnership deductions are Mr. Hopkins's tax items. With respect to those deductions, petitioner bears the burden of proving that in signing the joint

returns she had no reason to know that there were understatements attributable to those items.  See sec. 6015(b)(1)(C); Mora v. Commissioner, 117 T.C. 279, 285 (2001).  An individual has reason to know of the understatement if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the understatement.  See Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989); Mora v. Commissioner, supra at 287.

Petitioner claims that in signing the returns she had no reason to know of the understatements on the returns because she was unaware of Mr. Hopkins's investments in Far West Drilling and the other partnerships.  Petitioner's testimony at trial did not convince us that she was unaware that those investments were made or that Mr. Hopkins concealed his investments from her.[9] Further, even a cursory review of the joint returns for 1980, 1982, and 1983 would reveal that there were investments in partnerships for those years and that large partnership deductions were claimed.  The partnership deductions substantially reduced petitioner and Mr. Hopkins's tax liabilities for those years and, together with other deductions,

_____

[9]Petitioner's testimony suggests that none of the partnership investments reported on the joint returns were her own.  However, a Schedule K-1 for Shelter Associates III lists petitioner as a partner in that entity in 1984.

reduced their reported tax liabilities to zero.[10]  The losses from the partnership activities for 1982 and 1983 were largely attributable to the Far West Drilling deductions.  The joint return for 1982 showed a Far West Drilling partnership deduction of $83,402.  The joint return for 1983 showed a Far West Drilling partnership deduction of $91,086 and a depletion deduction of $2,126.  Those amounts far exceeded other partnership deductions which were claimed in the joint returns.

Petitioner, at the very least, understood the general concepts of Federal income taxation,[11] and she demonstrated to us no discernible difficulty in understanding English.  Petitioner was involved in the audit process with respect to the 1982 and 1983 joint returns.  At some point during the Internal Revenue Service (IRS) audit of those returns, petitioner and Mr. Hopkins were represented by John E. Lahart.[12]  Mr. Lahart spoke with petitioner on more than one occasion, and he testified that she

---

[10]However, in prior years, petitioner and Mr. Hopkins reported relatively large tax liabilities, $24,229 in 1978 and $22,684 in 1979, but reported insignificant partnership deductions.

[11]An individual cannot rely solely on ignorance of the attendant tax or legal consequences of an item giving rise to a deficiency to satisfy his or her burden under sec. 6015(b)(1)(C). See Price v. Commissioner, 887 F.2d 959, 964 (9th Cir. 1989).

[12]Petitioner and Mr. Hopkins signed a Form 2848, Power of Attorney and Declaration of Representative, dated Sept. 22, 1988, in which they appointed Mr. Lahart to represent them before the Internal Revenue Service (IRS).

did not appear confused about the subject matter that was being discussed and that she did not appear to have a problem with English. Petitioner subsequently hired David M. Hellman to represent her and Mr. Hopkins in prior Tax Court litigation concerning the disallowance of the NOLs related to the casualty loss.[13] Petitioner, Mr. Hopkins, their tax return preparer, and Mr. Hellman had a face-to-face meeting to discuss the issues involved in that case. In an October 25, 1990, letter to respondent's counsel in that case, Mr. Hellman represented that "The records concerning the 1980 investment in San Sierra Investment #II apparently were lost in the mud slide. Mrs. Hopkins recalls a 1980 payment to them of approximately $40,000." Also, in a May 17, 1990, letter to this Court, he represented that "From what I understand preliminarily upon brief discussions with Mrs. Hopkins, it appears the position taken on their income tax returns for the years in question was a correct position." Petitioner was actively involved in the prior Tax Court litigation concerning the disallowance of the NOLs related to the casualty loss. She was the only person other than her expert to

---

[13]Respondent issued notices of deficiency to petitioner and Mr. Hopkins for their 1978, 1979, 1981, and 1982 taxable years on the basis of the disallowance of the NOLs related to the casualty loss that they had claimed on their joint return for 1981. Petitioner and Mr. Hopkins filed a petition with the Tax Court, and the matter went to trial. During the trial, the parties agreed to settle the case. That case did not involve a claim for relief from joint and several liability.

- 12 -

testify on her behalf in that proceeding. Also, she was the person who dealt with the insurance company after it initially denied coverage for the loss of her house in 1982.

The record reflects that petitioner dealt with third parties with respect to her family's financial, tax, and legal matters. For example, respondent's revenue officer who was assigned to the collection of the income tax liabilities of petitioner and Mr. Hopkins testified that, except for one occasion, he dealt almost exclusively with petitioner. When he would request information or a response from petitioner and Mr. Hopkins, it was always petitioner who would respond.

Petitioner performed numerous financial functions within her family, exercised considerable discretion, and was ultimately responsible for the family's principal asset, the house at 111 Diablo Drive. She spent considerable sums in remodeling the house before 1982 and in rebuilding the house after the mudslide in 1982.[14] Petitioner directed the remodeling and rebuilding. She hired contractors, and she paid those individuals by check or in cash.

Given the size of the partnership deductions, the change in petitioner and Mr. Hopkins's reported taxes in 1980, 1982, and 1983, and petitioner's involvement in the family's financial

[14]The rebuilt residence included four bedrooms and four baths and occupied 4,976 square feet with a four-car, 920-square-foot carport.

affairs, we believe that she, as a reasonably prudent taxpayer, should have at least made inquiries concerning the large partnership deductions. "'Tax returns setting forth large deductions, such as tax shelter losses offsetting income from other sources and substantially reducing or eliminating the couple's tax liability, generally put a taxpayer on notice that there may be an understatement of tax liability.'" Mora v. Commissioner, 117 T.C. at 289 (quoting Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993), affg. T.C. Memo. 1992-228).

We are not convinced that Mr. Hopkins exercised such dominance over petitioner that she could not question the reporting of significant deductions. Petitioner has failed to establish that she did not have reason to know of the understatements attributable to the Far West Drilling deductions for 1982 and 1983.[15] Petitioner is not entitled to relief under section 6015(b) for the tax liabilities attributable to those items.

2. Section 6015(c)

Under section 6015(c)(1), if an individual who has made a joint return for any taxable year elects the application of this subsection, the individual's liability for any deficiency which is assessed with respect to the return shall not exceed the

_____

[15]Petitioner and Mr. Hopkins have maintained close ties to one another. He still uses a portion of petitioner's house as an office, and he also performs maintenance services.

portion of the deficiency properly allocable to the individual under section 6015(d).[16]  The purpose of section 6015(c) is to allocate the tax liability between the individuals who filed a joint return in approximately the same way it would have been had the individuals filed separately.

An individual shall be eligible to elect the application of section 6015(c) only if:  (1) At the time the election is filed, the electing individual is no longer married to, or is legally separated from, the other individual who filed the joint return; or (2) the electing individual was not a member of the same household as the other individual at any time during the 12-month period ending on the date the election is filed.  Sec. 6015(c)(3)(A)(i).  Respondent concedes that petitioner has met the requirements of section 6015(c)(3)(A)(i).

Pursuant to section 6015(c)(3)(B), an election under section 6015(c) for any taxable year may be made at any time after a

_____

[16]Sec. 6015(c)(1) provides:

SEC. 6015(c).  Procedures To Limit Liability for Taxpayers No Longer Married or Taxpayers Legally Separated or Not Living Together.

(1)  In general.--Except as provided in this subsection, if an individual who has made a joint return for any taxable year elects the application of this subsection, the individual's liability for any deficiency which is assessed with respect to the return shall not exceed the portion of such deficiency properly allocable to the individual under subsection (d).

deficiency for such year is asserted but not later than 2 years after the date on which the Secretary has begun collection activities with respect to the individual making the election. The applicable 2-year election period shall not expire before the date that is 2 years after the first collection activity taken by the IRS after the date of enactment. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(g)(2), 112 Stat. 740. Petitioner elected relief on May 24, 1999, within the specified period.

      a.  <u>Allocation of the Items Making Up the Deficiency</u>

Section 6015(c)(1) provides that the allocation of a deficiency should be made as provided in section 6015(d). Under section 6015(d)(1), the portion of any deficiency on a joint return allocated to an individual shall be the amount which bears the same ratio to such deficiency as the net amount of items taken into account in computing the deficiency and allocable to the individual under section 6015(d)(3) bears to the net amount of all items taken into account in computing the deficiency.[17]

_____

[17]Sec. 6015(d)(1) provides:

    SEC. 6015(d). Allocation of Deficiency.--For purposes of subsection (c)--

      (1) In general.--The portion of any deficiency on a joint return allocated to an individual shall be the amount which bears the same ratio to such deficiency as the net amount of items taken into account in computing the

(continued...)

Each individual who elects the application of section 6015(c) shall have the burden of proof with respect to establishing the portion of any deficiency allocable to such individual.  Sec. 6015(c)(2).

Respondent argues that a portion of the Far West Drilling deductions is attributable to petitioner.  He relies upon petitioner's testimony in a prior Tax Court case that did not concern petitioner's or Mr. Hopkins's investments in partnerships.  Petitioner testified under cross-examination in that case:

> Q     Isn't it a fact, Mrs. Hopkins, that during 1980 you invested money into Far West Drilling?
>
> A     Yes.
>
> Q     And wasn't that at least $22,000?
>
> A     Yes.

In the instant case, petitioner testified that she misunderstood the question; that she understood the question to refer to both her and Mr. Hopkins; and that she personally invested nothing in Far West Drilling.  Petitioner's testimony is supported by correspondence from Far West Drilling and a note that Mr. Hopkins signed in favor of the partnership, which indicates that Mr. Hopkins invested in Far West Drilling.  The record also contains

[17](...continued)
deficiency and allocable to the individual under paragraph (3) bears to the net amount of all items taken into account in computing the deficiency.

a Schedule K-1, Partner's Share of Income, Credits, Deductions, etc., for 1985, which reports Mr. Hopkins as a partner in Far West Drilling.  We find that the Far West Drilling deductions are Mr. Hopkins's items.

On brief, respondent argues that "Petitioner is not entitled to relief under I.R.C. § 6015(c) for the disallowed casualty losses due to the fact that petitioner owned the residence. Thus, the deficiencies arising from the disallowed casualty losses were due to her own item and she remains liable."

Section 6015(c) requires an allocation of the items giving rise to a deficiency to be made under section 6015(d)(3). Generally, any item giving rise to a deficiency on a joint return shall be allocated to individuals filing the return in the same manner as it would have been allocated if the individuals had filed separate returns for the taxable year.  Sec. 6015(d)(3)(A).[18]  However, section 6015(d)(3)(B) provides an

---

[18]Sec. 6015(d)(3) provides in part:

> SEC. 6015(d).  Allocation of Deficiency.--For purposes of subsection (c)--
>
> \*     \*     \*     \*     \*     \*     \*
>
> (3)  Allocation of items giving rise to the deficiency.--For purposes of this subsection--
>
> (A)  In general.--Except as provided in paragraphs (4) and (5), any item giving rise to a deficiency on a joint return shall be allocated to individuals filing the return in
>
> (continued...)

exception to this general rule where the other individual

receives a tax benefit from the item giving rise to a deficiency.

Section 6015(d)(3)(B) provides:

>     (B)  Exception where other spouse benefits.--Under
> rules prescribed by the Secretary, an item otherwise
> allocable to an individual under subparagraph (A) shall
> be allocated to the other individual filing the joint
> return to the extent the item gave rise to a tax
> benefit on the joint return to the other individual.

Section 6015(d)(3)(B) provides an alternative method of

allocating items giving rise to a deficiency between the

individuals filing a joint return, regardless of whether the

items would otherwise be allocable to one individual.  Its

purpose is to allocate liability between the individuals who

filed a joint return on the basis of the extent to which each

individual received the tax benefit of an erroneous deduction.

The language of section 6015(d)(3)(B) does not limit its

application to only one of the individuals who filed a joint

return.  It does not refer to items of a "requesting" or

"electing" individual or to items of a "nonrequesting" or

"nonelecting" individual.  It uses the terms "an individual" and

"the other individual filing the joint return".  Section

6015(d)(3)(B) requires an allocation between individuals who

filed a joint return no matter who is requesting or electing

---

[18](...continued)
                    the same manner as it would have been
                    allocated if the individuals had filed
                    separate returns for the taxable year.

relief. Indeed, under section 6015(c), either or both of the individuals who filed a joint return may elect relief.[19]

The Senate report discussing the allocation rule in section 6015(d)(3)(B) states: "Items of loss or deduction are allocated to a spouse only to the extent that income attributable to the spouse was offset by the deduction or loss. Any remainder is allocated to the other spouse." S. Rept. 105-174, at 57 (1998), 1998-3 C.B. 537, 593. The conference report likewise states:

> If the deficiency arises as a result of the denial of
> an item of deduction * * *, the amount of the
> deficiency allocated to the spouse to whom the item of
> deduction * * * is allocated is limited to the amount
> of income * * * allocated to such spouse that was
> offset by the deduction * * *. The remainder of the
> liability is allocated to the other spouse to reflect
> the fact that income * * * allocated to that spouse was
> originally offset by a portion of the disallowed
> deduction * * * [H. Conf. Rept. 105-599, at 252
> (1998), 1998-3 C.B. 747, 1006.]

See Mora v. Commissioner, 117 T.C. at 293. The examples in the Senate and conference reports illustrate the application of section 6015(d)(3)(B) and divide the liability for a deficiency in proportion to the amount of income offset for each individual. S. Rept. 105-174, supra at 58, 1998-3 C.B. at 594; H. Conf. Rept.

---

[19]The final regulations issued under sec. 6015 provide that "Relief may be available to both spouses filing the joint return if each spouse is eligible for and elects the application" of sec. 6015(c). Sec. 1.6015-3(a), Income Tax Regs. However, only a requesting spouse may receive relief under sec. 6015(c); a spouse who does not also elect relief under sec. 6015(c) remains liable for the entire amount of the deficiency. Sec. 1.6015-3(d)(1)(ii), Income Tax Regs.

105-599, supra at 252-253, 1998-3 C.B. at 1006-1007.  The

following examples are provided in the conference report:

> For example, a married couple files a joint return with wage income of $100,000 allocable to the wife and $30,000 of self employment income allocable to the husband. On examination, a $20,000 deduction allocated to the husband is disallowed, resulting in a deficiency of $5,600. Under the provision, the liability is allocated in proportion to the items giving rise to the deficiency. Since the only item giving rise to the deficiency is allocable to the husband, and because he reported sufficient income to offset the item of deduction, the entire deficiency is allocated to the husband and the wife has no liability with regard to the deficiency, regardless of the ability of the IRS to collect the deficiency from the husband.

> If the joint return had shown only $15,000 (instead of $30,000) of self employment income for the husband, the income offset limitation rule discussed above would apply. In this case, the disallowed $20,000 deduction entirely offsets the $15,000 of income of the husband, and $5,000 remains. This remaining $5,000 of the disallowed deduction offsets income of the wife. The liability for the deficiency is therefore divided in proportion to the amount of income offset for each spouse. In this example, the husband is liable for 3/4 of the deficiency ($4,200), and the wife is liable for the remaining 1/4 ($1,400).  [H. Conf. Rept. 105-599, supra at 252-253, 1998-3 C.B. at 1006-1007.]

The allocation in the above example is made without reference to

whether the husband, the wife, or both elect relief under section

6015(c).

On July 18, 2002, the Commissioner published final regulations under section 6015.[20]  Section 1.6015-3(d)(2), Income Tax Regs., of the final regulations provides in part:

> (2)  <u>Allocation of erroneous items</u>.  For purposes of allocating a deficiency under this section, erroneous items are generally allocated to the spouses as if separate returns were filed, subject to the following four exceptions:
>
> > (i)  <u>Benefit on the return</u>.--An erroneous item that would otherwise be allocated to the nonrequesting spouse is allocated to the requesting spouse to the extent that the requesting spouse received a tax benefit on the joint return.

While the above-quoted portion of the regulations does not specifically address the situation at issue, where an erroneous item of deduction of the electing individual offsets income of the nonelecting individual, it does not purport to preclude application of section 6015(d)(3)(B) to that situation.

Indeed, the final regulations provide an example which supports our application of the alternative allocation method in section 6015(d)(3)(B).  In section 1.6015-3(d)(5), <u>Example</u> (<u>5</u>), Income Tax Regs., <u>both</u> individuals who filed a joint return elect relief under section 6015(c).  The erroneous deduction is initially H's item; however, in the example, only a portion of

---

[20]These regulations are applicable for all elections or requests for relief filed on or after July 18, 2002.  <u>Washington v. Commissioner</u>, 120 T.C. 137, 154 n.9 (2003); sec. 1.6015-9, Income Tax Regs.  Petitioner's election was filed on May 24, 1999, before the effective date of the regulations.

H's deduction is used to offset H's income; the remaining portion offsets W's income. The example limits W's liability to the portion of the deficiency attributable to her income offset. However, with respect to H, the regulations conclude that H's election to be relieved of the portion of the deficiency attributable to W's income offset "would be invalid because H had actual knowledge of the erroneous items."[21]  If the final regulations were intended to limit application of section 6015(d)(3)(B) to erroneous deductions of a nonrequesting spouse,

---

[21]Sec. 1.6015-3(d)(5), Example (5), Income Tax Regs., provides:

Example (5).  Requesting spouse receives a benefit on the joint return from the nonrequesting spouse's erroneous item.  (i) In 2001, H reports gross income of $4,000 from his business on Schedule C, and W reports $50,000 of wage income.  On their 2001 joint Federal income tax return, H deducts $20,000 of business expenses resulting in a net loss from his business of $16,000.  H and W divorce in September 2002, and on May 22, 2003, a $5,200 deficiency is assessed with respect to their 2001 joint return.  W elects to allocate the deficiency.  The deficiency on the joint return results from a disallowance of all of H's $20,000 of deductions.

(ii)  Since H used only $4,000 of the disallowed deductions to offset gross income from his business, W benefitted from the other $16,000 of the disallowed deductions used to offset her wage income.  Therefore, $4,000 of the disallowed deductions are allocable to H and $16,000 of the disallowed deductions are allocable to W.  W's liability is limited to $4,160 (4/5 of $5,200).  If H also elected to allocate the deficiency, H's election to allocate the $4,160 of the deficiency to W would be invalid because H had actual knowledge of the erroneous items.  [Emphasis added.]

as respondent argues, the regulations could have simply said that.

But Example (5) of the final regulations indicates that the alternative allocation method of section 6015(d)(3)(B) is applied to both W <u>and</u> H, even though the erroneous deduction is initially H's item.  This is illustrated by the fact that H is denied relief under the actual knowledge exception.  The actual knowledge exception contained in section 6015(c)(3)(C) denies relief <u>only</u> if the Commissioner proves that the electing individual had actual knowledge of an item <u>allocable to the other individual</u>.[22]  Thus, <u>before</u> the actual knowledge exception can be applied, there must be an allocation of the items giving rise to a deficiency.  In Example (5), actual knowledge would have no relevance if the erroneous deduction was an item entirely allocable to H.  The example makes sense only if a portion of H's item is reallocated to W pursuant to section 6015(d)(3)(B).

Unless respondent establishes that petitioner had actual knowledge of the items giving rise to the deficiencies, petitioner is entitled to relief to the extent the deficiencies are attributable to Mr. Hopkins.

---

[22]The actual knowledge exception contained in sec. 6015(c)(3)(C) applies only in the case of "any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under subsection (d)".

   b.   Actual Knowledge Exception Does Not Apply to
        Petitioner

As previously indicated, if the Commissioner demonstrates that an individual making the election under section 6015(c) had "actual knowledge", at the time such individual signed the return, of any item giving rise to a deficiency (or portion thereof) which is not allocable to such individual under section 6015(d), the election under section 6015(c) will not apply to such deficiency (or portion).  Sec. 6015(c)(3)(C).  The Commissioner must prove actual knowledge by a preponderance of the evidence.  Culver v. Commissioner, 116 T.C. 189, 196 (2001). Actual knowledge in the case of disallowed deductions consists of "actual knowledge of the factual circumstances which made the item unallowable as a deduction." King v. Commissioner, 116 T.C. 198, 204 (2001).  Actual knowledge of the tax laws or legal consequences of the operative facts are not required.  Id.; Cheshire v. Commissioner, 115 T.C. 183, 196-197 (2000), affd. 282 F.3d 326 (5th Cir. 2002).

Respondent concedes that he has not proven actual knowledge with respect to the Far West Drilling adjustments that are allocable to Mr. Hopkins.  Respondent makes no argument on brief with respect to petitioner's actual knowledge of the NOL carryforward deductions for 1982 and 1984 attributable to the

casualty loss.[23]  We hold that respondent has not proven that petitioner had actual knowledge of the factual circumstances which made the NOL carryforward and the Far West Drilling deductions unallowable.

c.  Conclusion

We hold that petitioner is relieved of liability for deficiencies attributable to Mr. Hopkins's erroneous partnership deductions except for the portion, if any, of the erroneous partnership deductions that offsets her income.  We also hold that petitioner is liable for deficiencies attributable to her erroneous NOL deductions to the extent the NOL deductions may have offset her income, and she is relieved of liability for any portion of the deficiencies attributable to the erroneous NOL deductions which offset Mr. Hopkins's income.  Most of the income for the years 1982, 1983, and 1984 was Mr. Hopkins's income.  However, the record is not clear about some of the items of income, such as interest.  We expect the parties to resolve this uncertainty as part of the Rule 155 computation.

---

[23]The NOL deductions were disallowed because of overstatements of the NOL carryback and carryforward deductions attributable to the casualty loss.  A certified public accountant prepared the joint tax returns for 1981, 1982, and 1984.  He testified that he dealt with Mr. Hopkins and could not recall whether he discussed the tax returns with petitioner.  He did not testify regarding what petitioner did or did not know in signing the joint returns.

3.  Section 6015(f)

After we grant relief to petitioner under section 6015(c), she may still have some liability for portions of the deficiencies for 1982, 1983, and 1984 that are allocable to her under section 6015(d).  We will therefore consider her eligibility for relief under section 6015(f).  Under section 6015(f), the Secretary is authorized to grant equitable relief where:  (1) The taxpayer is not entitled to relief under section 6015(b) or (c), and (2) "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)".  See Cheshire v. Commissioner, 282 F.3d at 338.  We review for an abuse of discretion the Commissioner's decision not to grant equitable relief.  Butler v. Commissioner, 114 T.C. 276, 292 (2000).

The Far West Drilling deductions and the overstated NOL carryforward deductions greatly reduced petitioner and Mr. Hopkins's joint tax liabilities in 1982, 1983, and 1984.  In or about those years, considerable amounts were spent to rebuild petitioner's house at 111 Diablo Drive.  Petitioner was, and still is, the sole owner of that residence, and she was the person who received the most comfort and benefit from the use of that residence before and after those years.  The reduced tax liabilities for 1982, 1983, and 1984 enhanced petitioner's

ability to rebuild the residence. Petitioner did not present evidence regarding her inability to pay her reasonable basic living expenses, see sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs., or any other unique circumstances which might lead us to conclude that she will suffer economic hardship if, after application of section 6015(c), she remains jointly and severally liable for any remaining portions of the liabilities for 1982, 1983, and 1984. We hold that respondent did not abuse his discretion in deciding that it is not inequitable to hold petitioner jointly and severally liable for any remaining portions of the joint income tax liabilities for 1982, 1983, and 1984. Petitioner is not entitled to relief for those liabilities under section 6015(f).

B. Underpayments in 1988 and 1989

Petitioner claims relief under section 6015(b), (c), or (f) for her joint and several tax liabilities for 1988 and 1989. Subsections (b) and (c) of section 6015 apply only in the case of "an understatement of tax" or "any deficiency" in tax and do not apply in the case of underpayments of taxes reported on joint tax returns. Sec. 6015(b)(1)(B) and (c)(1); see also Block v. Commissioner, 120 T.C. 62, 66 (2003); Ewing v. Commissioner, 118 T.C. 494, 497, 498 n.4 (2002). We hold that petitioner is not entitled to relief under section 6015(b) or (c) for her 1988 and 1989 tax liabilities.

In determining an individual's entitlement to relief under section 6015(f) for an underpayment, the Commissioner considers the requesting spouse's knowledge, or reason to know, that the liability would be unpaid at the time the return was signed, as a factor weighing against relief. Rev. Proc. 2000-15, sec. 4.03(2)(b), 2000-1 C.B. 447, 449.

Petitioner has not shown to our satisfaction that she had no knowledge, or reason to know, that the taxes reported on the joint returns for 1988 and 1989 would not be paid. The record indicates that she was involved in the preparation of the returns for those years. Indeed, the 1989 joint tax return contains an attached Form 2688, Application for Additional Extension of Time to File U.S. Individual Income Tax Return, dated August 14, 1990, which states:

> At present we are not able to meet more demands of the IRS than we have already on hand. We are physically ill and emotionally sick. All of us are suffering from POST TRAUMATIC STRESS SYNDROMS.
>
> In spite of our conditions, we are currently dealing with the IRS on a major scale: our casualty loss investigation. Our home and all of our belongings were destroyed by a huge mudslide. We barely escaped with our lives. We are financially devastated. We can not do more.
>
> Please honor our request for an extension of this matter until the casualty loss investigation is concluded.
>
> Thank you! * * * [signed Marianne Hopkins].

Petitioner has not established that she did not know, or had no reason to know, that the reported tax liabilities on the 1988 and 1989 joint tax returns would be unpaid at the time she signed those joint tax returns.  See Rev. Proc. 2000-15, sec. 4.03(1)(d), 2000-1 C.B. at 449.  Petitioner has not established that she will suffer economic hardship if relief is not granted.  On the record before us, petitioner has not demonstrated that respondent's failure to grant equitable relief for the unpaid 1988 and 1989 joint tax liabilities was an abuse of discretion.

Decision will be
entered under Rule 155.