T.C. Memo. 2018-176

UNITED STATES TAX COURT

CHRISTOPHER SCHORSE, Petitioner, AND CYNTHIA PALABRICA, Intervenor v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23108-15. Filed October 22, 2018.

Christopher Schorse, pro se.

Cynthia Palabrica, pro se.

Richard C. Grosenick, for respondent.

[*2]      MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  Pursuant to section 6015(e)(1),[1] petitioner seeks review of respondent's determination that he is not entitled to relief from joint and several liability under section 6015(b), (c), or (f) for 2002, 2003, 2004, and 2010 with respect to Federal income tax returns that he jointly filed with intervenor, his former spouse.  The 2002 liability has been paid in full, and petitioner is not seeking a refund of any payments made toward the liability for that year.  Respondent and intervenor concede that petitioner is entitled to relief under section 6015(f) for 2010.[2]

The remaining issues to be decided are whether petitioner is entitled to relief from joint and several liability under section 6015(b), (c), or (f) for 2003 and 2004.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The first stipulation of facts between petitioner and respondent, the first amended first

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Because 2002 and 2010 are not in controversy, they will not be discussed further except to provide background information.

[*3] stipulation of facts between intervenor and respondent, and the exhibits are incorporated herein by this reference.[3] Petitioner resided in Wisconsin when he timely filed his petition; intervenor resided in Wisconsin when she intervened in this case.

Background

Petitioner and intervenor were married in 1996. They were legally separated in 2012, and their divorce became final in 2014. During their marriage they had three children, born in 1997, 2000, and 2002.

Petitioner holds a bachelor of science degree in computer science and has no formal education in business, finance, or accounting. For the years in issue petitioner had his own business, CRS Enterprises, Inc., an S corporation. Intervenor was an obstetrician-gynecologist (OB-GYN) and the 100% shareholder of HLS Medical Services S.C. (HLS), an S corporation.

Petitioner and intervenor managed their personal and business finances separately, and neither controlled the other's spending. They had separate bank accounts and a personal joint bank account used to pay the mortgage, insurance, and utility expenses for their family home. Historically and for the years in issue,

_____

[3]The first stipulation of facts between petitioner and respondent with attached exhibits contains identical stipulations and exhibits to the first amended first stipulation of facts between intervenor and respondent.

[*4] intervenor earned 80% to 90% of the household income. She paid most of the family expenses and all of the childrens' expenses, including $1,500 a month for private elementary school for one child and $1,400 a month for a full-time nanny for the other two children. Petitioner was aware that significant funds were spent on childcare and the cost of private school.

Tax Returns

For 2002, 2003, and 2004 intervenor provided petitioner with her tax information, including her HLS Schedules K-1, Partner's Share of Income, Deductions, Credits, etc. Intervenor's HLS Schedules K-1 reflected losses for 2002, 2003, and 2004. Petitioner asked intervenor and her business accountant about the losses. They informed him that intervenor did not have a sufficient basis in HLS to deduct the losses for those years. For each year in issue petitioner calculated their tax liability both with and without the loss claimed. For each year in issue petitioner then instructed his business accountant to prepare and file a joint return that claimed the loss deduction. Petitioner thought that the information on intervenor's HLS Schedules K-1 was similar to the information he would have reported on his business' Schedules K-1 and that the profits and losses reported on intervenor's HLS Schedules K-1 were the amounts to be used on the joint returns.

**[\*5]** For 2002 they reported adjusted gross income (AGI) of $257,734, claimed a loss deduction of $95,797, and received refunds totaling $21,678.33.[4] For 2003 they reported AGI of $253,259, claimed a loss deduction of $63,170, and received a refund of $1,650. For 2004 they reported AGI of $164,036, claimed an at-risk carryover deduction of $188,289, and received a refund of $16,329. During the years in issue they significantly renovated their family home with their tax refunds.

In 2005 or 2006 respondent examined petitioner and intervenor's 2002, 2003, and 2004 joint returns. For 2002 respondent assessed additional tax of $33,178 and an accuracy-related penalty of $6,635.60. For 2003 respondent assessed additional tax of $28,320 and an accuracy-related penalty of $5,664. For 2004 respondent assessed additional tax of $17,204 and an accuracy-related penalty of $3,440.80.

On October 2, 2007, petitioner and intervenor entered into an installment agreement to pay $500 a month on the 2002, 2003, and 2004 tax liabilities. Within four months their installment agreement for 2002, 2003, and 2004 was canceled because they defaulted on their payments. Petitioner and intervenor

[4]Petitioner and intervenor were issued a $16,896 refund on May 23, 2003, and a $4,782.33 refund on October 8, 2004. There is no explanation in the record as to why petitioner and intervenor were issued two refunds for 2002.

**[*6]** legally separated on June 25, 2012.  Intervenor continued to make payments on the 2002 liability, and it was paid in full on August 6, 2012.  Petitioner and intervenor's divorce was finalized on February 27, 2014.

Petitioner's Request for Administrative Relief

On June 17, 2013, before their divorce was final, petitioner submitted to the Internal Revenue Service Form 8857, Request for Innocent Spouse Relief, seeking relief from joint and several liability for 2002, 2003, and 2004.[5]  Under the explanation for involvement with finances and preparing returns, petitioner checked the boxes for "gathered receipts and cancelled checks", "gave tax documents * * * to the person who prepared the returns", and "reviewed the returns before they were signed".  Petitioner further explained that he was provided intervenor's tax information and assumed it was correct, but he did not verify whether it was correct.  Under their marital settlement agreement, intervenor agreed to be responsible for their tax liabilities for the years in issue through 2012.

On May 30, 2014, respondent made a preliminary determination that petitioner was entitled to full relief for 2002, 2003, and 2004 under section 6015(f) and partial relief for 2010 under section 6015(f).  On June 6, 2014, intervenor

_____

[5]On June 17, 2013, petitioner submitted a separate Form 8857 for 2010.

**[*7]** submitted to respondent a letter appealing the preliminary determination. On January 30, 2015, respondent's Office of Appeals (Appeals) informed petitioner that it was reconsidering petitioner's request. On February 25, 2015, petitioner provided Appeals the marital settlement agreement. On June 12, 2015, Appeals made a final determination that petitioner was ineligible for relief for 2002, 2003, 2004, and 2010 under section 6015(b), (c), or (f).

On Form 8857 petitioner reported total monthly income of $2,768.24 and total monthly expenses of $3,187. At the time Appeals made its final determination, petitioner's monthly income had increased to $4,036. At the time of trial petitioner's financial situation was substantially the same.

OPINION

Generally, married taxpayers may elect to file joint Federal income tax returns. Sec. 6013. Section 6013(d)(3) provides that if a joint return is filed each spouse is jointly and severally liable for the entire tax due for that year. A requesting spouse may be relieved from joint and several liability under section 6015, however, if certain conditions are met. Except as otherwise provided in section 6015, the requesting spouse generally bears the burden of proof. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004).

**[\*8]**  Section 6015 provides three potential avenues to relief under subsections (b), (c), and (f).  A requesting spouse who satisfies the conditions of subsection (b) may be relieved from liability for an understatement of tax attributable to the other spouse.  Similarly, a requesting spouse who satisfies the conditions of subsection (c) may have his or her liability for a deficiency limited to the portion of the deficiency allocated to him or her under subsection (d).  Finally, the requesting spouse may be granted relief under subsection (f) from any unpaid tax or any deficiency if relief is not available under subsection (b) or (c) and it would be inequitable to hold the requesting spouse liable.  The Court will determine whether petitioner is entitled to relief under subsection (b), (c), or (f) for 2003 and 2004.[6]  See sec. 6015(e)(1).

I.    Relief Under Section 6015(b)

Section 6015(b)(1) provides that a requesting spouse shall be relieved of joint and several liability for a particular year if each of the following requirements is met:  (A) a joint return was filed for the year in issue, (B) the return contains an understatement attributable to an erroneous item of the nonrequesting spouse, (C) the requesting spouse establishes that in signing the return he or she did not know and had no reason to know of the understatement,

_____

[6]As stated supra p. 2, 2002 and 2010 are no longer in issue.

**[*9]** (D) it is inequitable to hold the requesting spouse liable for the deficiency attributable to the understatement, and (E) the requesting spouse's claim for relief is timely.

Failure to meet one of these requirements precludes relief under section 6015(b).  Alt v. Commissioner, 119 T.C. at 313.  Respondent argues that petitioner has not satisfied the subparagraph (C) requirement of section 6015(b)(1).

To qualify for section 6015(b) relief, a requesting spouse cannot have had actual knowledge or a reason to know of the understatement at the time he signed the joint return.  Sec. 6015(b)(1)(C).  Generally, a requesting spouse has reason to know of the understatement if he has reason to know of the transaction that gave rise to the understatement.  Jonson v. Commissioner, 118 T.C. 106, 115 (2002), aff'd, 353 F.3d 1181 (10th Cir. 2003).  The U.S. Court of Appeals for the Seventh Circuit, to which this case is appealable absent an agreement between the parties, see sec. 7482(b), has adopted a more lenient approach in cases where the understatement results from improper deductions (versus cases involving unreported income), see Resser v. Commissioner, 74 F.3d 1528, 1536 (7th Cir. 1996), rev'g and remanding T.C. Memo. 1994-241; see also Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).  The Court of Appeals has stated that the requesting spouse must establish that he did

**[*10]** not know or have reason to know that the erroneous deduction would give rise to an understatement. Resser v. Commissioner, 74 F.3d at 1535-1536 (quoting Price v. Commissioner, 887 F.2d 959, 963 (9th Cir. 1989)). The Court applies a reasonably prudent person standard to evaluate the requesting spouse's knowledge in cases involving both unreported income and erroneous deductions. Hopkins v. Commissioner, 121 T.C. 73, 77-78 (2003) (regarding improper deductions); Butler v. Commissioner, 114 T.C. 276, 283-284 (2000) (regarding unreported income). A spouse knew or had reason to know of an understatement if a reasonably prudent person in his position would have known that the return contained an understatement when he signed it. Resser v. Commissioner, 74 F.3d at 1535-1536; Butler v. Commissioner, 114 T.C. at 283. The reasonably prudent person standard also imposes a duty of inquiry on the requesting spouse. Resser v. Commissioner, 74 F.3d at 1541; Hopkins v. Commissioner, 121 T.C. at 77-80; Butler v. Commissioner, 114 T.C. at 283-284. For understatements resulting from improper deductions, the requesting spouse had reason to know if he had sufficient knowledge of the facts underlying the deductions such that a reasonably prudent person in his position would seriously have questioned whether the deductions were erroneous. Resser v. Commissioner, 74 F.3d at 1536 (quoting Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), aff'g T.C.

**[\*11]** Memo. 1988-63).  In applying the reasonably prudent person standard, the Court considers four factors:  (1) the requesting spouse's level of education, (2) the requesting spouse's involvement in the family's financial and business activities, (3) any substantial unexplained increase in the family's standard of living, and (4) the nonrequesting spouse's evasiveness or deceitfulness about the family's finances.  Resser v. Commissioner, 74 F.3d at 1536.  No single factor is controlling.  Each of these four factors weighs against petitioner.

Petitioner has a bachelor of science degree in computer science and owned and operated his own business.  Even though petitioner does not have a degree in business, accounting, or finance, his experience owning and operating his S corporation provided him with at least a cursory understanding of the appropriate tax treatment of profits and losses.  Petitioner testified that he reported profits and losses from his business on Schedule K-1 each year and understood intervenor's Schedules K-1 to include the same type of information.

For the years in issue petitioner was involved in the family's financial activities and was aware of intervenor's financial and tax situation because he was provided that information.  The Court finds his claims to the contrary are self-serving and not credible.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (finding that the Court is not required to accept uncorroborated or self-serving

[*12] testimony as reliable and true).  While petitioner was not involved in intervenor's OB-GYN practice, he was given all of intervenor's tax documents and was involved in preparing the joint returns.  Petitioner calculated their tax liability for each year in issue before taking their tax information to his business accountant.  When he inquired about the losses reflected on intervenor's HLS Schedules K-1, intervenor and her business accountant told him intervenor could not deduct the losses for 2003 and 2004.  He was aware that claiming the losses would result in refunds because he compared their 2003 and 2004 tax liabilities with and without the losses before instructing his business accountant to deduct them.

Petitioner and intervenor maintained a high standard of living during the years in issue.  Their high standard of living included paying $1,500 a month for one of their children to attend a private elementary school and paying $1,400 a month for a full-time nanny for their other children.  In addition to their high standard of living, during the years in issue they used their tax refunds to renovate the family home.  Petitioner testified that he had no control over how intervenor spent her income or the refunds.  Petitioner was aware, however, that the joint income was being spent on high-cost items and that there was a substantial

[*13] increase in funds used to renovate the family home.  He benefited from the high standard of living and the renovations.

Finally, nothing in the record indicates that intervenor tried to deceive or hide anything from petitioner.  While petitioner and intervenor maintained separate bank accounts, they also had a joint bank account to pay the mortgage and other household costs.  Petitioner was provided all of intervenor's tax information to prepare the joint returns.  When he asked about the losses reported on intervenor's Schedules K-1, he was given an answer by intervenor and her business accountant.  Petitioner provided all of his and intervenor's tax information to his business accountant to prepare the joint returns and instructed his accountant to include the losses on the joint returns.

In consideration of the four enumerated factors, the Court finds that a reasonably prudent person in petitioner's position at the time he signed the joint returns could be expected to know that the joint returns contained understatements and that petitioner actually knew the 2003 and 2004 joint returns each contained an understatement.  Thus, petitioner failed to satisfy his burden to establish that he did not know or have reason to know that the loss deductions would result in understatements of tax for 2003 and 2004 and is not entitled to relief under section 6015(b).  Failing any condition of subsection (b) precludes relief under that

**[*14]** subsection. As the Court has found that petitioner failed the knowledge requirement, he is not entitled to relief under section 6015(b) for 2003 or 2004.

## II. Relief Under Section 6015(c)

An election under section 6015(c) is ineffective with respect to any portion of a deficiency if the Commissioner proves by a preponderance of the evidence that the requesting spouse had actual knowledge, when signing the return, of an item giving rise to a deficiency that is otherwise allocable to the nonrequesting spouse. Sec. 6015(c)(3)(C); Hopkins v. Commissioner, 121 T.C. at 86. In cases involving erroneous deductions, a spouse is deemed to have actual knowledge of an item giving rise to a deficiency if he had actual knowledge of the factual circumstances that made the deduction unallowable. King v. Commissioner, 116 T.C. 198, 204 (2001). Actual knowledge of the tax laws or legal consequences of the operative facts is not required. Id.; Cheshire v. Commissioner, 115 T.C. 183, 196-197 (2000), aff'd, 282 F.3d 326 (5th Cir. 2002).

As the Court found supra pp. 13-14, petitioner had actual knowledge of the items allocable to intervenor giving rise to the understatements when he signed the joint returns. Therefore, petitioner is not entitled to relief under section 6015(c) for 2003 or 2004.

[*15] III.    Relief Under Section 6015(f)

Section 6015(f) grants the Commissioner discretion to relieve an individual from joint liability, where relief is not available under section 6015(b) or (c), if, taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency. When the Court reviews a determination by the Commissioner denying relief under section 6015(f), both the standard and scope of review are de novo. Porter v. Commissioner, 132 T.C. 203, 210 (2009).

As directed by section 6015(f), the Commissioner has prescribed procedures to determine whether a requesting spouse is entitled to equitable relief from joint and several liability. Those procedures are set forth in Rev. Proc. 2013-34, sec. 4, 2013-43 I.R.B. 397, 399-403. Although the Court considers those procedures when reviewing the Commissioner's determination, the Court is not bound by them. Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Rogers v. Commissioner, T.C. Memo. 2018-53, at *112. The Court's determination ultimately rests on an evaluation of all the facts and circumstances. Porter v. Commissioner, 132 T.C. at 210.

Pursuant to Rev. Proc. 2013-34, sec. 4, the Commissioner conducts a multistep analysis when determining whether a requesting spouse is entitled to

[*16] equitable relief under section 6015(f). The requirements for relief under Rev. Proc. 2013-34, supra, are categorized as threshold or mandatory requirements, streamlined elements, and equitable factors. A requesting spouse must satisfy each threshold requirement to be considered for relief. See Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400. If the requesting spouse meets the threshold requirements, the Commissioner will grant equitable relief if the requesting spouse meets each streamlined element. See id. sec. 4.02, 2013-43 I.R.B. at 400. Otherwise, the Commissioner will determine whether equitable relief is appropriate by evaluating the equitable factors. See id. sec. 4.03, 2013-43 I.R.B. at 400-403.

A.   Threshold Requirements

The requesting spouse must meet seven threshold requirements to be considered for relief under section 6015(f). Rev. Proc. 2013-34, sec. 4.01. The parties agree, and the Court finds, that petitioner meets the threshold requirements.

B.   Streamlined Elements

If the threshold requirements are satisfied, Rev. Proc. 2013-34, sec. 4.02, describes circumstances in which the Commissioner will make a streamlined determination granting equitable relief under section 6015(f). To be eligible for a streamlined determination, the requesting spouse, among other things, must

[*17] establish, under guidelines provided in Rev. Proc. 2013-34, sec. 4.02(3)(a), that he "[d]id not know or have reason to know that there was an understatement or deficiency on the joint income tax return". Id. sec. 4.03(2)(c)(i), 2013-43 I.R.B. at 401. As found supra pp. 13-14, petitioner had knowledge of the understatements on the joint returns for the years in issue. Therefore, petitioner is ineligible for a streamlined determination, in accordance with Rev. Proc. 2013-34, sec. 4.02.

    C.    <u>Equitable Factors</u>

Rev. Proc. 2013-34, sec. 4.03, "applies to a requesting spouse who requests relief under * * * section 6015(f), and who satisfies the threshold conditions of section 4.01, but does not qualify for streamlined determinations granting relief under section 4.02." Id. sec. 4.03(1). Rev. Proc. 2013-34, sec. 4.03(2), lists the following seven nonexclusive factors to be considered in determining whether, taking into account all the facts and circumstances, equitable relief under section 6015(f) should be granted: (1) the current marital status of the spouses, (2) whether the requesting spouse would suffer any economic hardship if relief were not granted, (3) whether the requesting spouse knew or had reason to know of the item giving rise to the understatement, (4) whether either spouse has a legal obligation to pay the outstanding Federal income tax liability, (5) whether the requesting spouse significantly benefited from the understatement, (6) whether the

**[\*18]** requesting spouse has made a good faith effort to comply with the income tax laws in the years following the years for which relief is sought, and (7) whether the requesting spouse was in poor mental or physical health at the time the returns in issue were filed, at the time the request for relief was made, or at the time of trial.

In making a determination under section 6015(f), the Court considers the enumerated factors as well as any other relevant factors. No single factor is dispositive, and "[t]he degree of importance of each factor varies depending on the requesting spouse's facts and circumstances." Rev. Proc. 2013-34, sec. 4.03(2); see Pullins v. Commissioner, 136 T.C. at 448; Hall v. Commissioner, T.C. Memo. 2014-171, at \*38.

### 1. Marital Status

If the requesting spouse is no longer married to the nonrequesting spouse, this factor will weigh in favor of granting relief. See Rev. Proc. 2013-34, sec. 4.03(2)(a). If the requesting spouse is still married to the nonrequesting spouse, this factor is neutral. Id. As petitioner and intervenor were divorced before respondent's final determination, this factor favors petitioner.

**[*19]**    2.    Economic Hardship

Economic hardship exists if satisfaction of the tax liability, in whole or in part, would result in the requesting spouse's being unable to meet his or her reasonable basic living expenses.  Id. sec. 403(2)(b), 2013-43 I.R.B. at 401. Where the requesting spouse's income exceeds 250% of the Federal poverty guidelines, this factor favors relief if monthly income exceeds reasonable basic living expenses by $300 or less.  Id.  If denying relief from joint and several liability will not cause the requesting spouse to suffer economic hardship, this factor will be neutral.  Id.  At the time of trial petitioner's monthly income was approximately $4,036, which exceeds 250% of the Federal poverty guidelines. Petitioner did not provide the Court with evidence of his monthly expenses. Therefore, petitioner has not established that he will suffer economic hardship if the Court denies him relief.  This factor is neutral.

    3.    Knowledge

Knowledge exists when the requesting spouse knew or had reason to know of the item giving rise to the understatement or deficiency as of the date the joint return was filed or the date the requesting spouse reasonably believed the joint return was filed.  Id. sec. 4.03(2)(c)(i)(A).  If the requesting spouse did not know and had no reason to know of the item giving rise to the understatement, this

**[*20]** factor will weigh in favor of relief. Id. If the requesting spouse knew or had reason to know of the item giving rise to the understatement, this factor will weigh against relief. Id.

As previously discussed, petitioner knew of the items giving rise to the understatements on the joint returns for the years in issue. See supra pp. 13-14. This factor weighs against granting relief.

### 4. Legal Obligation

This factor favors relief where the nonrequesting spouse has the sole obligation to pay an outstanding Federal tax liability under a binding divorce decree or other legally binding agreement. Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402. This factor is neutral where both spouses have an obligation to pay the outstanding liability under a binding divorce decree or other legally binding agreement. Id. Petitioner and intervenor's divorce decree states that intervenor is solely responsible for the 2003 and 2004 Federal income tax liabilities. Accordingly, this factor favors petitioner.

### 5. Significant Benefit

Under this factor the Court considers whether the requesting spouse received a significant benefit, beyond normal support, from the understatement. Id. sec. 4.03(2)(e). Normal support is measured by the circumstances of the

[*21] particular party.  Porter v. Commissioner, 132 T.C. at 212.  Guidance under section 6015(f) states that benefits in excess of normal support are mitigated, however, where the nonrequesting spouse controlled the household or business finances, making this factor neutral.  Rev. Proc. 2013-34, sec. 4.03(2)(e).  This factor will weigh in favor of granting relief if the nonrequesting spouse significantly benefited from the unpaid tax or understatement and the requesting spouse had little or no benefit or the nonrequesting spouse enjoyed the benefit to the requesting spouse's detriment.  Id.

As discussed above, petitioner and intervenor had a high standard of living, which included private school and a nanny for their children.  Additionally, during the years in issue they significantly renovated the family home with their tax refunds.  Petitioner benefited significantly from the understatements of tax for 2003 and 2004.  Petitioner argues he had no control over how intervenor spent her income or the refunds.  Intervenor, however, had contributed 80% to 90% of the household income and had paid most of the household expenses out of their joint bank account.  The record reflects that petitioner was aware and enjoyed the benefit of the renovations, the private school, and the nanny.

Additionally, petitioner controlled the preparation of the joint returns for the years in issue and decided to deduct HLS' losses.  Petitioner's argument fails to

[*22] take into account that his income tax liabilities were also reduced by the erroneous deductions claimed on their returns. Because petitioner significantly benefited from the understatements, this factor weighs against him.

### 6. Compliance

The parties agree that petitioner is currently in compliance with his Federal income tax obligations. Therefore, this factor favors petitioner.

### 7. Health

This factor may weigh in favor of relief if the requesting spouse was in poor mental or physical health at the time the returns in issue were filed, at the time the request for relief was made, or at the time of trial. Id. sec. 4.03(2)(g), 2013-43 I.R.B. at 403; see also Pullins v. Commissioner, 136 T.C. at 454. If the requesting spouse was in neither poor physical nor poor mental health, this factor is neutral. Rev. Proc. 2013-34, sec. 4.03(2)(g). The parties agree that petitioner was not in poor mental or poor physical health at any of those times. Thus, this factor is neutral.

### D. Conclusion on Section 6015(f) Relief

Although many of the factors for equitable relief either favor petitioner or are neutral, petitioner's actual knowledge of the losses deducted on the joint returns, his involvement in preparing those returns, and the significant benefit he

**[\*23]** received from the understatements weigh too heavily against him to allow relief. Weighing all the facts and circumstances, the Court finds that petitioner is not entitled to relief from joint and several liability under section 6015(f) for 2003 or 2004.

IV.    Conclusion

The Court finds that petitioner is not entitled to relief from joint and several liability under section 6015(b), (c), or (f) for 2003 and 2004.

The Court has considered all the other arguments of the parties, and to the extent not discussed above, finds those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

An appropriate decision

will be entered.