T.C. Summary Opinion 2010-119

UNITED STATES TAX COURT

ALINA OLIVERA, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5761-09S.                    Filed August 18, 2010.

Alina Olivera, pro se.

Anna A. Long, for respondent.

ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

In a final notice of determination respondent denied petitioner's claim for section 6015 relief regarding joint and several liability arising from the 2003 and 2005 joint Federal income tax returns filed by petitioner and George Navarrete (Mr. Navarrete). According to that notice, petitioner was not eligible for relief under section 6015(b), (c), or (f). The issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015.

## Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts, supplemental stipulation of facts, and accompanying exhibits. Petitioner resided in the State of California when the petition was filed.

Petitioner and Mr. Navarrete were married in May 1997. They have two children together. In May 2007, petitioner and Mr. Navarrete separated, and they were divorced in November 2007. The judgment for dissolution of marriage entered by the Superior Court of California, County of Riverside, includes a marital settlement agreement (MSA) drafted by petitioner. By the terms of the MSA, Mr. Navarrete is to pay one-half of the "IRS Bills

2003-2005", and petitioner is to pay one-half of the "TAX 2003-2005 IRS obligation."

In 1999, both petitioner and Mr. Navarrete became registered nurses. Petitioner holds an associate's degree and a bachelor of science degree in nursing. Mr. Navarrete holds an associate's degree in nursing.

Petitioner alleges that throughout their marriage Mr. Navarrete intimidated her, broke objects, belittled her and the children, had substance abuse issues, and moved in and out of treatment facilities for bipolar disorder. Other than petitioner's testimony, the record does not provide evidence (testimonial or documentary) of these allegations for the years in issue.[2]

During 2003 and 2005, Mr. Navarrete was the primary breadwinner, working as a registered nurse. In 2003 petitioner had a business called On Legal Nurse Consulting, while in 2005 petitioner had a business called Spa2YouNet, a mobile day spa business. Petitioner stated that she began each of these businesses so that she could be home more to provide care for her young children and to limit the interactions between the children and Mr. Navarrete. During 2003 and 2005 petitioner saved

_____

[2] Petitioner stated that Mr. Navarrete's substance abuse (other than alcohol) began in 2006, though "[h]e was starting to drink before then, but it was out of the house." Petitioner obtained a temporary restraining order against Mr. Navarrete in June 2007.

receipts for expenses related to the businesses and placed them in folders to be used in the preparation of tax returns. Petitioner handled most of the financial affairs of the businesses.

During 2003 and 2005 petitioner and Mr. Navarrete shared responsibility for the family's finances; however, petitioner was the one who reconciled the bank statements at the end of each month.

Petitioner and Mr. Navarrete timely filed their 2003 and 2005 joint Federal income tax returns. Both returns were prepared by Mr. Navarrete using tax preparation software. For both 2003 and 2005, petitioner provided Mr. Navarette with receipts for her businesses. After the returns were completed, they were at all times available to petitioner for review on the household computer.

Attached to the 2003 tax return is a Schedule C, Profit or Loss From Business, for On Legal Nurse Consulting, of which petitioner was the proprietor. The Schedule C reported zero income and a net loss of $46,242. Also attached to the return are two Forms 2106, Employee Business Expenses. The first Form 2106 bears Mr. Navarrete's name and claimed unreimbursed employee business expenses of $10,895 for his occupation as a registered nurse. The second Form 2106 bears petitioner's name and claimed

unreimbursed employee business expenses of $2,030 for her occupation as a registered nurse.

Attached to the 2005 tax return is a Schedule C for Spa2YouNet, of which petitioner was the proprietor.  The Schedule C reported gross receipts of $6,816 and a net loss of $29,207.  Also attached to the return is a Form 2106 on which Mr. Navarrete claimed unreimbursed employee business expenses of $30,107 for his occupation as a registered nurse.

For 2004 petitioner filed a return using the married filing separately filing status and claiming a minimal Schedule C net loss.

In 2006, the Internal Revenue Service selected petitioner's 2005 joint Federal income tax return for audit, and in early 2007 the audit was expanded to include 2003.  Petitioner actively participated in the audit of both years whereas Mr. Navarrete took a more secondary role.  During the audit process, innocent spouse relief provisions were discussed, but neither petitioner nor Mr. Navarrete expressed a desire to pursue relief.  Ultimately, petitioner and Mr. Navarrete agreed with the examiner that they owed a $5,566 deficiency and a $1,473 accuracy-related penalty for 2003.  On February 21, 2007, petitioner sent respondent a request for an installment agreement for the 2003 liability, which agreement respondent accepted.

In a notice of deficiency dated May 25, 2007, respondent determined a deficiency of $4,426 and an accuracy-related penalty of $885.20 for 2005. Neither petitioner nor Mr. Navarrete filed a petition for redetermination.

For both 2003 and 2005 respondent disallowed deductions claimed (1) on petitioner's Schedules C, for car and truck expenses and other expenses; (2) on the Schedules A, Itemized Deductions, for gambling losses, mortgage interest, tax preparation fees, investment expenses, job search expenses, and union and professional dues; (3) for unreimbursed employee business expenses; and (4) for educator expenses. For 2005 respondent disallowed deductions for tuition and fees and self-employed health insurance expenses. Respondent also disallowed the additional child tax credit for 2005.

On April 8, 2008, petitioner filed a Form 8857, Request for Innocent Spouse Relief. On her Form 8857, petitioner admitted that she signed the income tax returns and did not claim that she signed them under duress. Petitioner also admitted on the Form 8857 that at the time she signed the returns she was concerned about the refund of all income tax withheld, but that Mr. Navarrete assured her that the returns were accurate. Finally, the financial statement on the Form 8857 indicates that petitioner has no income but incurs expenses in excess of $4,000

per month for the maintenance of a household for herself and her children.

In the final notice of determination dated January 29, 2009, respondent denied petitioner's request for relief under section 6015.

## Discussion

In general, spouses may elect to file a joint Federal income tax return for a year even if one spouse has no obligation to file a return for that year. Sec. 6013(a). After electing to file a joint Federal income tax return, each spouse is jointly and severally liable not only for the entire tax due, but also for any deficiency subsequently determined. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). If certain requirements are met, however, an individual may be relieved of joint and several liability under section 6015. Except as otherwise provided in section 6015, the taxpayer bears the burden of proving his or her entitlement to relief. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

There are three types of relief available under section 6015. In general, section 6015(b) provides full or apportioned relief from joint and several liability, section 6015(c) provides proportionate tax relief to divorced or separated taxpayers, and in certain circumstances section 6015(f) provides equitable

relief from joint and several liability if relief is not available under subsection (b) or (c).

A.  Section 6015(b)

Under section 6015(b), a requesting spouse may be relieved of joint and several liability from an understatement of tax to the extent that the understatement is attributable to the nonrequesting spouse.  The understatements on petitioner's joint returns for 2003 and 2005 are in large part attributable to the deductions claimed on petitioner's Schedules C.  With respect to any understatement attributable to Mr. Navarrete, petitioner must establish, inter alia, that she did not know and had no reason to know that there was an understatement.  See sec. 6015(b)(1)(C).

A spouse seeking relief has reason to know of the understatement "if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the * * * understatement."  Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989).  Factors to consider in analyzing whether the spouse had "reason to know" of the understatement include:  (1) The spouse's level of education; (2) the spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) the

culpable spouse's evasiveness and deceit concerning the couple's finances.  Id.; Wiener v. Commissioner, T.C. Memo. 2008-230.

At the time the 2003 and 2005 tax returns were filed, petitioner was a college graduate.  Petitioner was involved in the household financial affairs and was primarily responsible for the financial affairs for her Schedule C businesses.  On the other hand, petitioner and Mr. Navarrete did not have an obviously apparent change in lifestyle during the years in issue.

However, the recitation of the foregoing facts does not end the required analysis.  Under Price v. Commissioner, supra at 965-966, a taxpayer has reason to know of an understatement if she has a duty to inquire and fails to satisfy that duty.  The requesting spouse has a duty to inquire when she knows "enough facts to put her on notice that such an understatement exists." Id.  A tax return claiming a large deduction that significantly reduces a couple's tax liability generally puts the taxpayer who joins in filing a joint return on notice that the return may contain an understatement.  Wiener v. Commissioner, supra; see also Levin v. Commissioner, T.C. Memo. 1987-67.  The requesting spouse is deemed to have constructive knowledge of the understatement if she fails to inquire.  Price v. Commissioner, supra at 965-966; see also Von Kalinowski v. Commissioner, T.C. Memo. 2001-21 (requesting spouse found to possess constructive

knowledge of the understatement where income of $370,263 was offset by losses of $228,133).

Petitioner did not prepare the tax returns; however, she provided receipts to Mr. Navarrete to facilitate the completion of the returns. And during the audit process petitioner told the IRS examiner that she reviewed the completed returns and signed them. In addition, on her Form 8857 petitioner stated that when she signed the returns she was uncertain why she and Mr. Navarrete were receiving such large refunds.

In contrast, petitioner testified at trial that she did not review the returns when she signed them.[3] However, we are unable to accept petitioner's testimony at face value. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). We find that when petitioner signed the returns, she reviewed them, at least in a cursory fashion, and therefore had a duty to inquire.

Petitioner's failure to inquire does not insulate her from joint and several liability. See Price v. Commissioner, supra at 965-966; see also Von Kalinowski v. Commissioner, supra.

Accordingly, petitioner is not entitled to relief from joint and several liability under section 6015(b).

---

[3] When asked at trial whether she trusted Mr. Navarrete to fill out the tax returns accurately, petitioner stated that "it wasn't my priority." Petitioner explained further that she "didn't even review [returns] when they were being prepared [by a paid preparer] because I trusted it was being prepared correctly."

B.  Section 6015(c)

Under section 6015(c), if the requesting spouse is no longer married to or is legally separated from the spouse with whom she filed the joint return, the requesting spouse may elect to limit her liability for a deficiency to that portion of the liability which is properly allocable to her under section 6015(d).

At the time petitioner filed her request for relief on April 8, 2008, she and Mr. Navarrete were divorced; therefore, petitioner was eligible to elect relief under section 6015(c) when she filed her request.

Generally, items giving rise to a deficiency on a joint return are allocated between spouses as if separate returns had been filed.  Sec. 6015(d)(3)(A); see also sec. 1.6015-3(d)(2), Income Tax Regs.  Under the flush language of section 6015(a), any allocation under section 6015(d)(3) is made without regard to community property laws.  Charlton v. Commissioner, T.C. Memo. 2001-76.

On the 2003 return respondent disallowed deductions attributable to petitioner for job search expenses claimed on Schedule A, car and truck expenses and other expenses claimed on Schedule C, and unreimbursed employee business expenses claimed on Form 2106.  Because these deductions are allocable to petitioner, she is not entitled to section 6015(c) relief with

respect to them.  See sec. 6015(d)(3)(A); see also sec. 1.6015-3(d)(2)(iv), Income Tax Regs.

Also for 2003 respondent disallowed deductions allocable to Mr. Navarrete for unreimbursed employee business expenses and gambling losses.  The remaining deductions disallowed for 2003 for mortgage interest expenses, tax preparation fees, investment expenses, union and professional dues, and educator expenses are (consistent with respondent's view) attributable equally to petitioner and Mr. Navarrete.

On the 2005 return respondent disallowed deductions attributable to petitioner for car and truck expenses claimed on Schedule C and for self-employed health insurance expenses. Petitioner's gross receipts were also increased by an amount not reported on her Schedule C.  Because these items are allocable to petitioner, she is not entitled to section 6015(c) relief with respect to them.  See sec. 6015(d)(3)(A); see also sec. 1.6015-3(d)(2)(iii) and (iv), Income Tax Regs.

For 2005 respondent disallowed a deduction allocable to Mr. Navarrete for unreimbursed employee business expenses.  The remaining deductions disallowed for 2005 for tuition and fees and educator expenses are (consistent with respondent's view) attributable equally to petitioner and Mr. Navarrete.

An election under section 6015(c) is ineffective with respect to any portion of a deficiency if the Commissioner proves

by a preponderance of the evidence that the requesting spouse had actual knowledge, when signing the return, of an item giving rise to a deficiency that is otherwise allocable to the nonrequesting spouse. Sec. 6015(c)(3)(C); Hopkins v. Commissioner, 121 T.C. 73, 86 (2003).[4] In cases involving erroneous deductions, a spouse is deemed to have actual knowledge of an item giving rise to a deficiency if she had actual knowledge of the factual circumstances that made the deduction unallowable. King v. Commissioner, 116 T.C. 198, 204 (2001). Actual knowledge of the tax laws or legal consequences of the operative facts is not required. Id.; Cheshire v. Commissioner, 115 T.C. 183, 196-197 (2000), affd. 282 F.3d 326 (5th Cir. 2002).

We find that petitioner had actual knowledge, when signing the returns, of the items allocable to Mr. Navarrete giving rise to the deficiencies. Although petitioner alleges that she did not review the returns, she made at least a cursory review of them.

In addition, petitioner had actual knowledge of the factual circumstances making unallowable both the deductions attributable solely to Mr. Navarrete and those attributable equally to

---

[4] The requirement that a taxpayer not have actual knowledge of an item is eliminated where the taxpayer signs the return under duress. Sec. 6015(c)(3)(C). At trial petitioner alleged that she signed the returns under duress; however, on her Form 8857 petitioner did not indicate that she signed the returns under duress. Based on the record as a whole, we find that petitioner did not sign the returns under duress.

petitioner and Mr. Navarrete.  For example, at trial petitioner stated that neither she nor Mr. Navarrete was an educator during the years in issue and that she did not think she or Mr. Navarrete would have incurred unreimbursed employee business expenses as registered nurses.

Accordingly, petitioner is not entitled to section 6015(c) relief.

C.  Section 6015(f)

Section 6015(f) permits relief from joint and several liability where "it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)". Sec. 6015(f)(1).  We review de novo petitioner's entitlement to equitable relief under section 6015(f).  See Porter v. Commissioner, 132 T.C. 203, 210 (2009).

Pursuant to section 6015(f), the Commissioner has prescribed revenue procedure guidelines to help IRS employees determine whether a requesting spouse is entitled to relief from joint and several liability.  See Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying and superseding Rev. Proc. 2000-15, 2000-1 C.B. 447. The Court consults these guidelines when reviewing the IRS' denial of relief.  See Washington v. Commissioner, 120 T.C. 137, 147-152 (2003).

According to Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297-298, a requesting spouse must satisfy seven conditions

(threshold conditions) before the Commissioner will consider a request for relief under section 6015(f). The threshold conditions of this section are stated in the conjunctive, and each condition must be satisfied to be eligible for relief under section 6015(f). Id.

As relevant herein Rev. Proc. 2003-61, sec. 4.01(7), 2003-2 C.B. at 297-298, provides that the income tax liability from which the requesting spouse seeks relief must be attributable to an item of the nonrequesting spouse, unless one of four enumerated exceptions applies. Petitioner is, therefore, not entitled to relief under section 6015(f) for the items attributable solely to her unless one of the enumerated exceptions applies.

The only exception relevant to petitioner's case applies if the requesting spouse establishes that he or she was the victim of abuse before the time the return was signed and that fear of retaliation prevented the requesting spouse from challenging the treatment of items on the return. See id. Abuse is not limited to physical abuse and may include verbal and mental abuse. Nihiser v. Commissioner, T.C. Memo. 2008-135. An allegation of abuse, however, requires substantiation, or at least specificity. Id.; see also, e.g., Downs v. Commissioner, T.C. Memo. 2010-165 (finding no abuse when reported incidents of claimed abuse, harassment, and stalking occurred after the years in issue); Fox

v. Commissioner, T.C. Memo. 2006-22 (weighing abuse as a positive factor where a police report corroborated the requesting spouse's claim of assault); Knorr v. Commissioner, T.C. Memo. 2004-212 (finding no abuse where the requesting spouse provided only generalized claims of physical and emotional abuse); Collier v. Commissioner, T.C. Memo. 2002-144 (finding no abuse in absence of specific details).

In the instant case, corroboration supporting petitioner's claim of abuse by Mr. Navarrete indicates only that abuse occurred sometime after the returns at issue were signed. See Downs v. Commissioner, supra. Therefore, we are unable to conclude that petitioner has satisfied all of the threshold requirements necessary for relief under section 6015(f) for those items attributable solely to her.

However, petitioner has satisfied the threshold conditions with respect to those items attributable solely to Mr. Navarrete and, consistent with respondent's conclusions, for one-half of those items attributable equally to petitioner and Mr. Navarrete. Therefore, petitioner may still be eligible for relief under section 6015(f) for these items.

Rev. Proc. 2003-61, sec. 4.03(2), 2003-2 C.B. at 298-299, contains a nonexclusive list of factors, based on the facts and circumstances, that the Commissioner will consider in determining whether to grant equitable relief under section 6015(f). The

nonexclusive list of factors includes:  (1) Whether the requesting spouse is separated or divorced from the nonrequesting spouse; (2) whether the nonrequesting spouse would suffer economic hardship if not granted relief; (3) whether the requesting spouse knew or had reason to know of the understatement; (4) whether the nonrequesting spouse had a legal obligation to pay the outstanding tax liability pursuant to a divorce decree or agreement; (5) whether the requesting spouse received a significant benefit from the nonpayment of the tax liability; and (6) whether the requesting spouse has made a good faith effort to comply with the tax laws for the tax years following the year to which the request for such relief relates. Id. sec. 4.03(2)(a), 2003-2 C.B. at 298.

Several factors favor granting petitioner relief under section 6015(f).  Petitioner and Mr. Navarrete were divorced when petitioner filed her request for relief.  Petitioner has established that she would suffer economic hardship if relief is not granted.  Petitioner has complied with Federal income tax laws in the years following the taxable years for which she seeks relief.  On the other hand, the knowledge factor weighs against granting relief.

In addition, Rev. Proc. 2003-61, sec. 4.03(2)(b), 2003-2 C.B. at 299, lists two positive factors that the Commissioner will consider in favor of granting relief if present.  Those

factors are:  (1) Whether the nonrequesting spouse abused the requesting spouse, and (2) whether the requesting spouse was in poor mental or physical health when signing the return or requesting relief.

As we have previously found, petitioner has not proven abuse before the time that the returns were signed.  In addition, petitioner did not assert or demonstrate that she was in poor mental or physical health when signing the returns or requesting relief.  Therefore, these factors are neutral.

On balance, we conclude that it would be inequitable to hold petitioner liable for the tax liabilities arising from the 2003 and 2005 joint Federal income tax returns that are either (1) attributable solely to Mr. Navarrete or (2) Mr. Navarrete's portions of the liabilities that are attributable equally to petitioner and Mr. Navarrete.  Accordingly, for 2003 and 2005 petitioner is entitled to partial relief from joint and several liability under section 6015(f) for those items attributable solely to Mr. Navarrete and for one-half of those items attributable equally to petitioner and Mr. Navarrete.

<u>Conclusion</u>

We have considered all of the arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude that they are unpersuasive.

Finally, we observe that our holding does not preclude petitioner from requesting a collection alternative, such as an installment agreement, offer-in-compromise, or currently not collectible status.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.