T.C. Memo. 2019-113

UNITED STATES TAX COURT

MELINDA JEAN WELWOOD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17254-17L.                    Filed September 4, 2019.

<u>JoAnne Wallace McIntosh</u>, for petitioner.

<u>Brooke S. Laurie</u>, <u>Sheila R. Pattison</u>, and <u>Roberta L. Shumway</u>, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  The petition in this case was filed in response to a notice
of determination concerning collection action and a notice of determination
denying a request for relief under section 6015.  The issue for decision is whether
petitioner is entitled to relief under section 6015(f) from liability on joint returns

[*2] filed with Michael J. Welwood (M. Welwood) for 2008, 2011, 2014, and 2015 and whether collection may proceed with respect to unpaid liabilities for 2007, 2010, 2012, and 2013.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for relevant years, and Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference.  Petitioner resided in Texas when she filed her petition.

Background

Petitioner was born in 1944.  She completed two years of college. Petitioner and M. Welwood were married on March 25, 1973.  In 2003 they separated and contemplated divorce but were reconciled in that same year. Petitioner and M. Welwood remained married until his death on September 24, 2017.  They had one son who was an adult at all material times.

Petitioner suffers certain health conditions that have been with her since birth.  Other health problems are age related but have not prevented her gainful employment and are not unusual.

[*3]   In 2003, when the couple separated, they agreed to a division of property. Pursuant to the agreement, M. Welwood assigned to petitioner half of his interests in the profits, losses, and capital of the following partnerships:  Castle Rock Associates, LP; Harbor Vista Associates, LP; MJ/RM Associates, LP; MJW Associates, LP; MJW/Claybourne Associates, LP; MJW/SCA Associates, LP; MW/RA Associates, LP; Shakespeare Associates, LP; Summerville Associates, LP; W/A Associates, LP; W/A Associates II, LP; Oak Knoll Apartments, Ltd.; and Bluefield Associates.  (There are minor inconsistencies in the names of entities in the stipulated documents and the stipulation.  The findings are based on the documents as stipulated.)

The interests subject to the 2003 division of property agreement involved partnerships created in the 1980s by M. Welwood and Robert Arcand.  The partnerships invested in low-income housing units and apartment buildings in Oregon, Colorado, California, and Montana.  M. Welwood and Arcand marketed the partnerships to investors in high-income tax brackets who were looking for tax reduction opportunities.  M. Welwood and the other investors in the partnerships were clients of the certified public accounting firm KPMG.  The partnerships were designed to generate tax savings in early years and avoid taxation on income in later years by sale of the partnership interests and a step-up in basis to the

[*4] purchasers. However, in 1986 changes in the tax laws limiting the deduction of passive losses against other income caused the partnerships to lose value, which made them unattractive to prospective buyers.

Sonja Haugen was a KPMG partner who had business dealings with M. Welwood and the other investors in the partnerships. Haugen met petitioner in the 1980s, and they became friends. When petitioner and M. Welwood temporarily separated in 2003, Haugen recommended that petitioner not take ownership of the partnership interests. However, petitioner took ownership on the advice of her then attorney. From 2003 through 2015, partnership distributions for the M. Welwood interests were recorded by the partnerships as one-half to M. Welwood and one-half to petitioner.

In or about 2005 or 2006 petitioner obtained a Florida real estate license. She and her husband moved to Texas in 2007 after encountering financial difficulties in Florida. She has been constantly employed by her current employer since 2008 and is currently a manager of employee benefits with take-home pay of approximately $4,200 per month.

M. Welwood suffered a series of strokes culminating in two in 2010 that left him cognitively challenged. In 2011 he was injured in an automobile accident. He was hospitalized and in rehabilitation and nursing care facilities for various

[*5] periods until his death, returning to the homes occupied by petitioner between stays in a hospital or other facility. The last such facility was A Serene Setting, where he began living in 2015 or 2016. While he was in the various facilities and through the time of his death, petitioner managed his care and maintained the household. She paid all of the household bills and the expenses of his care. She would visit her husband and take him documents to sign. M. Welwood was sometimes mentally incapacitated or otherwise cognitively impaired. During one such period of incapacitation in 2011, petitioner signed their joint tax return for 2010 on his behalf pursuant to a durable power of attorney.

Petitioner and M. Welwood filed joint Federal tax returns through tax year 2015. Their joint returns for 2007, 2008, 2010, 2011, 2012, 2013, 2014, and 2015 were filed after extensions to October 15 of the following year were obtained. As of November 15, 2017, there were balances due on the joint returns, exclusive of accrued penalties and interest, as follows:

| Year | Balance due |
| --- | --- |
| 2008 | $106,830.30 |
| 2010 | 16,420.34 |
| 2011 | 7,024.95 |
| 2012 | 14,767.20 |

[*6]

| 2013 | 16,688.50 |
| 2014 | 30,583.91 |
| 2015 | 22,263.43 |

Petitioner caused separate returns to be filed for 2016 under circumstances described below. Petitioner's separate return for 2016 and the separate return that she caused to be filed for her husband were filed on January 2, 2018.

Haugen began to prepare income tax returns for petitioner and M. Welwood after she retired from KPMG and their prior preparer became ill. She prepared their joint returns for 2014 and 2015 and their separate returns for 2016, but she did not sign them because she was unpaid. After M. Welwood's automobile accident and frequent hospitalizations and rehabilitation, petitioner collected the information required for tax return filings and forwarded them either to their prior preparer or to Haugen. Haugen explained to petitioner and discussed with her counsel the effect of filing separate returns with the substantial tax liabilities arising out of the partnerships reported by only M. Welwood. For 2016 the separate return Haugen prepared for M. Welwood reported taxable gain of $864,967 and tax liability of $225,532. On petitioner's separate return for 2016 she reported wages and Social Security income of $68,337 and tax of $4,888.

[*7]  In an undated marital property agreement notarized on June 2, 2015, petitioner purports to assign to M. Welwood her interests in the profits, losses, and capital of the following partnerships:  Castle Rock Associates, LP; Harbor Vista Associates, LP; MJ/RM Associates, LP; MJW Associates, LTD; MJW/Claybourne Assets, LP; MJW/SCA Associates, LTD; MW/RA Associates, LP; Shakespeare Associates, LP; Summerville Associates, LP; W/A Associates, LP; W/A Associates II, LP; Oak Knoll Apartments, Ltd.; and Bluefield Associates.

By a partnership interest purchase agreement and assignments of partnership interests dated as effective on November 15, 2016, the following partnership interests were transferred to Inner Pacific Advantage, LLC, for the sum of $55,000:

| Name of LP[1] | Seller's LP interest (%) percentage of profit/loss | Seller's SLP[2] interest (%) percentage of profit/loss | Seller's LP interest (%) percentage of capital | Seller's SLP interest's (%) percentage of capital | Purchase price |
|---|---|---|---|---|---|
| Castle Rock Associates, LP | 7.321 | 0.25 | 10.714 | 5.000 | $10,500 |
| Harbor Vista Associates, LP | 9.781 | --- | 17.500 | --- | 5,500 |
| MJ/RM Associates, LP | 4.375 | --- | 13.131 | --- | 2,000 |
| MJW Associates, LP | 3.550 | 0.25 | 7.666 | 5.000 | 2,000 |
| MJW/Claybourne Associates II | 5.000 | --- | 13.636 | --- | 2,000 |
| MJW/SCA Associates, LP | 8.500 | 0.25 | 11.666 | 5.000 | 2,000 |
| MW/RA Associates, LP | 2.725 | 0.25 | 7.000 | 5.000 | 5,500 |
| Shakespeare Associates, LP | --- | 0.50 | --- | 10.000 | 2,000 |
| Summerville Associates, LP | 5.168 | 0.22 | 8.375 | 4.375 | 2,000 |

**[*8]**

| | | | | | |
|---|---|---|---|---|---|
| W/A Associates, LP | 3.500 | --- | 12.720 | --- | 5,000 |
| W/A Associates II, LP | 5.200 | 0.25 | 9.000 | 5.00 | 16,500 |
| Total Considerations | | | | | 55,000 |

[1]Limited Partnership (LP).
[2]Special Limited Partnership (SLP).

Although the check in payment of the proceeds of sale was payable to M. Welwood, the proceeds were deposited into an account solely in the name of petitioner.

Appeals Determinations

In response to a Letter 1058, Final Notice of Intent to Levy and Your Right to a Hearing, sent February 8, 2016, with respect to unpaid liabilities for 2007, 2010, 2012, and 2013, on March 8, 2016, petitioner filed a request for a hearing under section 6330(b). The request was assigned to an Appeals officer, who verified that the requirements of applicable law or administrative procedure had been met.

Assisted by her counsel, petitioner filed a Form 8857, Request for Innocent Spouse Relief, on October 18, 2016. The section 6330(b) process was suspended pending the outcome of the section 6015 relief case.

Section 6015 relief was denied in a notice of determination sent May 16, 2017. The explanation in the notice was as follows:

**[*9]** The * * * [requesting spouse (RS) and nonrequesting spouse (NRS)] filed joint tax returns for the tax years ending December 31, 2008; December 31, 2011; December 31, 2014; and December 31, 2015. The taxpayers are married. The RS had the NRS placed in a full time nursing care facility since he is physically and mentally incapacitated. They are still considered living together for the purposes of this code section. The RS has a durable power of attorney for the NRS and manages all his affairs. They have continued to file jointly every year.

The RS claimed abuse, but she also described the NRS as not having the cognitive ability to peel an orange. The RS didn't provide any dates of abuse or explain how the abuse is related to the tax matter. The NRS started having health problems many years ago. On October 19, 2010 the NRS suffered his fourth stroke. His left side was affected during that stroke. He had permanent numbness in his left side and became cognitively challenged. His health continued to decline until he was in a car accident on February 17, 2011. He has been under constant 24 hour medical care since the accident.

The RS indicated the underpayments are caused by what she considers phantom income caused by investment partnerships she describes as tax shelters. The RS claimed she wasn't involved in the decision to purchase the investment partnerships. The RS said the phantom income isn't tangible income; therefore, she doesn't have the ability to pay tax on that income.

The RS argued that she agreed to file jointly because she lives in a community property state. The RS didn't want to be separately liable for half of the community income. The RS hasn't indicated any intention of filing separately while the NRS is still alive. She argued holding her jointly liable is unfair since the community property laws in Texas make it impossible for her to file any other way.

The RS lives alone in the marital home. She claimed her monthly household income is $5,822 and expenses are $12,870. The RS hasn't supported any of her expenses. She claimed she is paying $5,917 of federal income tax withholding on wages of $4,833. Research shows

[*10] the income is $8,444 per month for the RS and the NRS.  The NRS's income was included since the RS included expenses for him.

Analyzing the application of Rev. Proc. 2013-34, 2013-43 I.R.B. 397, the notice stated that petitioner met the threshold conditions but that she was not entitled to a streamlined determination.  The notice stated that factors of marital status, economic hardship, legal obligation, significant benefit, and mental or physical health problems were neutral.  The notice stated that tax compliance was a negative factor because at that time neither a request for extension nor a 2016 tax return had been filed.  (Respondent no longer contends that this factor is negative and states that it is neutral.)  As to "Knowledge/Reasonable expectation", the notice stated:

> Knowledge/Reasonable expectation - This factor is unfavorable since the RS did not have a reasonable expectation the NRS would pay the underpayments when the returns were filed.  The NRS has been suffering from health problems for several years.  The RS didn't provide the date that she took over the finances or responsibility for filing the tax returns.  The 2008 tax return was filed before the NRS was completely incapacitated, but he had suffered four strokes before he became fully incapacitated.  The RS only provided a date for the fourth stroke.  The RS had the NRS placed in a full time nursing care facility in 2011 after he was in a car accident.  The RS has a durable power of attorney for the NRS.  She manages all his affairs and would have access to all his income information.  The RS knew the NRS didn't have the mental or physical capacity to manage the payment of the taxes when the 2011, 2014, and 2015 tax returns were filed.  She didn't provide information regarding her involvement in the 2008 tax return.

[*11] On July 13, 2017, a Notice of Determination Concerning Collection

Action(s) Under Section 6320 and/or 6330 and Your Request for Relief from Joint

and Several Liability under Section 6015 was sent to petitioner. The notice stated

in part:

> Based on the facts and circumstances Appeals Officer Rosalyn J Havlin sustained the preliminary determination to deny the requesting spouse (RS) Melinda Welwood innocent spouse relief. The RS managed the financial matters since the non-requesting spouse (NRS) Mr. Welwood is in a full time nursing care facility. The RS has continued to file jointly with the NRS all the way through her most recently filed tax return. The RS knew the NRS could not pay the taxes when she had the tax returns prepared. The RS has not shown it inequitable to hold her liable.
>
> Houston Appeals offered the taxpayer a collection due process hearing by letter, phone or in-person, in a substantive contact letter mailed May 19, 2017. The taxpayer did not request a face to face hearing. The telephone hearing was scheduled for June 20, 2017 at 1:30 pm CST.
>
> The telephone hearing was held with Settlement Officer Sally Bujnoch and the taxpayer's representative Joanna McIntosh. The representative raised the issue that the taxpayer received a 90 Day Letter[,] Letter 3288 dated May 16, 2017 denying innocent Spouse relief. The taxpayer disagrees with this decision and plan[s] to petition Tax Court. The representative stated the taxpayer does not want to pursue any collection alternatives at this time. The Settlement Officer advised the representative since the taxpayer did not provide any of the requested information unable to determine any collection alternative at this time.
>
> The taxpayer did not raise any other issues during this hearing.

[*12] Balancing Efficient Collection and intrusiveness

> IRC[ ]Section 6330(c)(3)(C) requires that the Settlement Officer determine if the proposed levy action balances the need for the efficient collection of the taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary.
>
> The taxpayer has been denied innocent spouse relief under IRC 6015 (b)(c) & (f).  The taxpayer did not provide sufficient information to determine if a collection alternative would have been appropriate.  It is Appeals' determination that the proposed levy action balances the need for efficient collection of the taxes with their legitimate concern the action is no more intrusive than necessary.  The proposed levy is sustained.

The petition filed August 14, 2017, challenged both notices.

OPINION

Generally, married taxpayers may elect to file joint Federal income tax returns.  Sec. 6013.  Section 6013(d)(3) provides that if a joint return is filed each spouse is jointly and severally liable for the entire tax due for that year.  A requesting spouse may be relieved from joint and several liability under section 6015 if certain conditions are met.  Except as otherwise provided in section 6015, the requesting spouse generally bears the burden of proof.  Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004).

Section 6015(f) grants the Commissioner discretion to relieve an individual from joint liability, where relief is not available under section 6015(b) or (c), if,

[*13] taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or deficiency. Subsections (b) and (c) of section 6015 apply only in the case of "an understatement of tax" or "any deficiency" in tax and do not apply in the case of underpayments of tax reported on joint returns. Sec. 6015(b)(1)(B), (c)(1). When the liability arises from an underpayment of tax reported as due on a joint return, relief is available only under section 6015(f). See sec. 6015(b)(1)(B), (c)(1), (f)(1); Hopkins v. Commissioner, 121 T.C. 73, 88 (2003).

Petitioner has requested relief from joint and several liability under section 6015(f), and she has waived any reliance on subsection (b) or (c). As directed by section 6015(f), the Commissioner prescribed procedures to determine whether a requesting spouse is entitled to equitable relief from joint and several liability. Those procedures are set forth in Rev. Proc. 2013-34, sec. 4, 2013-43 I.R.B. at 399-403. Although the Court considers those procedures when reviewing the Commissioner's determination, the Court is not bound by them. Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011).

Pursuant to Rev. Proc. 2013-34, sec. 4, the Commissioner conducts a multistep analysis when determining whether a requesting spouse is entitled to equitable relief under section 6015(f). See Rev. Proc. 2013-34, sec. 4.01, 4.02,

**[*14]** and 4.03.  The requirements for relief under Rev. Proc. 2013-34, <u>supra</u>, are categorized as threshold or mandatory conditions, requirements for a streamlined determination, and equitable factors.  A requesting spouse must satisfy each threshold requirement to be considered for relief.  <u>See</u> <u>id.</u> sec. 4.01, 2013-43 I.R.B. at 399-400.  If the requesting spouse meets the threshold requirements, the Commissioner will grant equitable relief if the requesting spouse also meets each streamlined element.  <u>See</u> <u>id.</u> sec. 4.02, 2013-43 I.R.B. at 400.  Otherwise, the Commissioner will determine whether equitable relief is appropriate by evaluating the equitable factors.  <u>See</u> <u>id.</u> sec. 4.03, 2013-43 I.R.B. at 400-403.

<u>Threshold Requirements</u>

The requesting spouse must meet seven threshold requirements to be considered for relief under section 6015(f).  <u>See</u> Rev. Proc. 2013-34, sec. 4.01.  Those requirements are:  (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) absent certain enumerated exceptions, the tax liability from

**[\*15]** which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse. Id.

In this case, the notice of determination denying relief stated that petitioner had satisfied the threshold requirements. However, citing Rev. Proc. 2013-34, sec. 4.01(4), respondent argues that reconveying the partnerships to her husband and filing separate returns for 2016 as recommended by her counsel and accountant were part of a fraudulent scheme that disqualifies petitioner from satisfying threshold condition (4).

This Court has previously denied relief under section 6015(f) when it found a fraudulent scheme when spouses transferred property with the intent to hide such transfers. See Chen v. Commissioner, T.C. Memo. 2006-160. We see no intent to hide the transfers in this case or other indicia of fraud. We accept the determination, therefore, that petitioner satisfies the threshold requirements.

Streamlined Determination Elements

If the threshold requirements are satisfied, Rev. Proc. 2013-34, sec. 4.02, sets forth the following requirements that a requesting spouse must satisfy to qualify for a streamlined determination by the Commissioner granting relief under section 6015(f): (1) the requesting spouse is no longer married to the nonrequesting spouse on the date the IRS makes its determination; (2) the

**[\*16]** requesting spouse will suffer economic hardship if relief is not granted; and (3) in the case of an underpayment, the requesting spouse did not know or have reason to know that the nonrequesting spouse would not or could not pay the tax reported on the joint return either as of the date the return was filed, or the date the requesting spouse reasonably believed the return was filed. The requesting spouse must establish he or she satisfies each of the three elements to receive a streamlined determination granting relief. See Rev. Proc. 2013-34, sec. 4.02.

Petitioner contends that she should be treated as no longer married to M. Welwood at the time of the determination because they were no longer members of the same household at any time during the 12-month period ending on the date the IRS made its determination. She relies on his residence at A Serene Setting during that period, but the record is unclear as to the date that residence commenced. Respondent asserts that husband and wife may be members of the same household even if they reside in separate dwellings if it is reasonable to assume that the absent spouse will return to the household and the household, or a substantially equivalent household, is maintained in anticipation of his return. See sec. 1.6015-3(b)(3)(i), Income Tax Regs. The record is unclear whether it was reasonable to assume that petitioner's husband would return to the household consistent with the pattern of prior periods. Petitioner's actions in taking care of

**[\*17]** her husband (despite alleged abuse over the years), paying household bills, and bearing the financial burdens of his care suggest that she regarded herself as a member of the same household and married to him until he died. Her conduct was commendable but not a reason for relief from their joint tax liabilities.

The hardship issue is disputed in this case, as discussed below. Also as discussed below, we conclude that petitioner knew or had reason to know that the tax reported on each joint return would not be paid on the date the return was filed. We agree with respondent that petitioner is not entitled to a streamlined determination.

Equitable Factors

Rev. Proc. 2013-34, sec. 4.03, provides a list of nonexclusive factors to be weighed by the Commissioner in making a decision. They include (a) marital status (i.e., do the spouses remain together?), (b) economic hardship, (c) knowledge or reason to know of the understatement by the requesting spouse, (d) legal obligation arising from a divorce decree or other binding agreement, (e) significant benefit gained by the requesting spouse, (f) compliance with income tax laws, and (g) mental or physical health at the time of filing the request for relief. No single factor is determinative, and all factors are considered and weighted appropriately. Kellam v. Commissioner, T.C. Memo. 2013-186, at \*26.

**[\*18]** Because this case involves underpayments of reported liabilities, an important factor is whether the requesting spouse knew or had reason to know that the other spouse would not pay the reported liabilities. See Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii), 2013-43 I.R.B. at 401.

Respondent treats as neutral, i.e., neither in favor of nor against relief, factors (a), (d), (e), (f), and (g). (Although the notice of determination treated economic hardship as neutral, respondent argues against that treatment, as discussed below.) Petitioner treats only factor (e) as neutral and argues that six factors favor relief. As to factor (d), petitioner argues that the question of legal obligation is neutral for the earlier years but contends that the marital property agreement entered into on June 2, 2015, favors relief for 2016. But petitioner filed a separate return for that year, and that year is not before us. If petitioner is referring to liability with respect to the 2015 return filed in 2016, we are skeptical that an agreement entered into under the circumstances here should favor relief.

The factors specified above are nonexclusive, and other factors relevant to a specific claim for relief may be taken into account. Rev. Proc. 2013-34, sec. 4.03(2), 2013-43 I.R.B. at 400. Thus respondent points out the significant tax benefits claimed on the joint returns and argues that they should weigh against relief. Petitioner replies that the record does not support this claim. However, her

[*19] witness, Haugen, explained that the nature of the partnerships promoted and entered into by M. Welwood were intended and designed to obtain substantial tax benefits in the early years that necessarily resulted in liabilities in later years. For that reason, Haugen recommended against petitioner's acceptance of interests in the partnerships in 2003 and recommended petitioner transfer them back to her husband in 2015. The implicit nature of the arrangement for early tax benefits and the attempt to avoid liability for the natural consequences is a consideration as to whether equitable relief is justified. However, those consequences are what is in issue here and should not be a separate factor. This consideration is therefore neutral.

Respondent also argues that petitioner should not be afforded relief because she does not seek equity with "clean hands". Respondent asserts that petitioner made material misrepresentations in financial forms and other submissions to the IRS with respect to her section 6015 claims and in her attempts to secure "currently not collectible" status for the outstanding liabilities. We have disregarded the assertions in the forms submitted to the IRS as unreliable for the reasons stated in the notices of determination and argued in respondent's brief. The lack of consistent treatment of the household income and expenses and the

[*20] absence of corroborating records are troublesome. We do not have a sufficient basis for concluding, however, that the misrepresentations were deliberate.

The most contested factors in this case are whether petitioner has established economic hardship if relief is not granted, whether her knowledge that the tax would not be paid justifies denial of relief, and whether her health problems favor relief. We agree with respondent that the other specified factors are neutral. Giving appropriate weight to factors (b), (c), and (g) guides our determination in this case.

Generally, for purposes of section 6015(f) economic hardship exists when collection of the tax liability will render the taxpayer unable to meet basic living expenses. Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B. at 401. The determination of whether a spouse will suffer economic hardship is based on rules similar to section 301.6343-1(b)(4), Proced. & Admin. Regs. Rev. Proc. 2013-34, sec. 4.03(2)(b). The facts and circumstances considered include: (1) the requesting spouse's age, employment status and history, ability to earn, and number of dependents; (2) the amount reasonably necessary for food, clothing, housing, medical expenses, and transportation; and (3) any extraordinary

[*21] circumstances or other facts the taxpayer raises. See Wilson v. Commissioner, T.C. Memo. 2017-63, at *12; sec. 301.6343-1(b)(4), Proced & Admin. Regs.

The information petitioner submitted in support of her claim for relief was questionable and was challenged by respondent in several respects. Respondent argues on brief that petitioner's monthly income exceeds her claimed monthly basic living expenses by more than $300, and petitioner replies that the excess is $300 or less. There is no reliable evidence of petitioner's assets. We agree with respondent that petitioner has not shown such economic hardship as would favor relief.

We next examine whether the requesting spouse knew or had reason to know that there was an understatement or deficiency on the joint income tax return, or knew or had reason to know that the nonrequesting spouse would not or could not pay a reported but unpaid tax liability. We believe the evidence compels the conclusion that petitioner knew that M. Welwood would not and could not pay the reported liabilities. Petitioner contends that her knowledge was obviated by a pattern of abuse throughout the marriage, but we are unpersuaded that any perceived abuse was material to the issues before us. She testified that she was fearful because her husband had guns, but the only incident she

[*22] specifically described occurred in 2015 or 2016 while he was in a nursing and rehabilitative care facility. During the incident M. Welwood stated that he wanted a gun in order to commit suicide. There is no evidence that he threatened petitioner with a gun or that he had access to a gun at the time.

Petitioner was aware of the partnership interests as early as 2003 when they were transferred in part to her as a result of the separation. During the relevant periods petitioner managed the household finances and arranged for the preparation and filing of the joint returns. Although she argues that she did not understand the tax consequences, she was aware of the partnerships and is charged with constructive knowledge of the contents of the joint returns that she signed. "Section 6015 does not protect a spouse who turns a blind eye to facts readily available to her." Porter v. Commissioner, 132 T.C. 203, 212 (2009); see Briley v. Commissioner, T.C. Memo. 2019-55, at *13-*14, *23. Relief may be denied where the requesting spouse knew of the circumstances giving rise to the tax liability even if she did not understand the tax consequences. See Cheshire v. Commissioner, 282 F.3d 326, 334-335 (5th Cir. 2002), aff'g 115 T.C. 183 (2000).

Petitioner's arguments concerning her lack of understanding of the partnerships and the tax consequences are misplaced and do not shield her from responsibility for the tax reported on the returns and the knowledge that the

[*23] amounts shown on the returns would not be paid. Whatever the reasons for the tax liabilities, they were reported on the joint returns. She cannot obtain relief from liability by refusing to read her mail or look at their joint returns.

When petitioner obtained interests in the partnerships in 2003 and transferred them back in 2015, she was advised by an accountant and a lawyer. She had access to and control over the bank account into which the proceeds of sale of some of the partnerships were deposited in 2016. The monies were used for the continuing high costs of M. Welwood's care. She did not make any payments on the back taxes from those proceeds, and she knew that M. Welwood was in no position to do so. In the context of all of the facts and circumstances considered with respect to equitable relief we give the greatest weight to this factor, and it weighs against relief.

Certain of petitioner's health problems have been with her from birth. With respect to petitioner's age-related health issues, they have not prevented her gainful employment and are not unusual. They may be a consideration in future collection efforts by the IRS. We agree with respondent that as of now this factor is neutral.

By our estimation, petitioner's knowledge weighs heavily against relief and all of the other relevant factors are neutral. Although petitioner's situation is

[*24] difficult and unfortunate, the circumstances are not compelling and do not justify relief from the joint liabilities.  She offered no reasonable alternatives to the proposed collection actions and has suggested no abuse of discretion with respect to that determination.  She chose only to pursue total relief under section 6015(f).  We are not persuaded that she is entitled to such relief.

We have considered the other arguments of the parties, but they do not affect our holding.  For the reasons set forth above, the notices of determination will be sustained.

<u>Decision will be entered for</u>

<u>respondent</u>.