T.C. Summary Opinion 2008-133

UNITED STATES TAX COURT

BRENDA H. JENNINGS AND ROBIN D. JENNINGS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4939-06S.                    Filed October 16, 2008.

Brenda H. Jennings and Robin D. Jennings, pro sese.

James H. Harris, Jr., for respondent.

NIMS, Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless

otherwise indicated, subsequent section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

Some of the facts have been stipulated and are so found. When this petition was filed, Brenda H. Jennings and Robin D. Jennings resided in Pennsylvania. At all relevant times, Mr. and Ms. Jennings were married, though at the time of trial the two were in the process of obtaining a divorce.

In 2003 Mr. and Ms. Jennings shared the same house. During that year, Mr. Jennings withdrew $16,990 from a section 401(k) plan from a previous employer. Mr. Jennings did so without the knowledge of Ms. Jennings. He then attempted to purchase a vehicle for his own use, using $12,000 of the proceeds from the withdrawal and financing the remainder. Mr. Jennings then returned the vehicle and received $9,800 of his downpayment in return. Mr. Jennings then used an undetermined amount of the funds from the withdrawal to replace the floor in the kitchen of the Jennings' house, purchase new kitchen appliances, and improve steps and walls in other areas of the house. The floor was replaced due to water damage caused by Mr. Jennings.

On their 2003 joint income tax return, Mr. and Ms. Jennings included the $16,990 withdrawal as income but did not report the section 72(t) early withdrawal addition to tax. In addition, the

Jenningses failed to include $9,850 of unemployment compensation Mrs. Jennings received from the Commonwealth of Pennsylvania.

On the basis of the original return, respondent determined a $3,689 deficiency in the Jenningses' 2003 Federal income tax. The deficiency was due to the two items identified above. In November of 2005 Mr. and Ms. Jennings amended their 2003 return to correct these two items, and they calculated that they owed $2,677 in tax and penalties, of which $1,699 is attributable to the section 72(t) additional tax. The parties now agree that this figure is the correct amount of the underpayment, and this amount remains unpaid.

Two weeks after amending their 2003 return, the Jenningses received a notice of deficiency based upon the original 2003 return. The petition seeking redetermination of the original deficiency was filed with this Court on March 9, 2006.

On August 3, 2006, after petitioning this Court, Ms. Jennings filed with respondent a Form 8857, Request for Innocent Spouse Relief, seeking to avoid liability for the early withdrawal additional tax. At the time of her request, Ms. Jennings still resided with Mr. Jennings. In January 2007 respondent denied Ms. Jennings' request for innocent spouse relief. Ms. Jennings did not amend the petition to challenge respondent's determination to deny her relief from joint and several liability.

Trial was held on March 10, 2008. The parties consented to the introduction of the innocent spouse issue at trial pursuant to Rule 41(b). Because the parties and respondent have agreed to the correct amount of the underpayment, the sole issue for decision is whether respondent abused his discretion in denying Ms. Jennings relief from joint and several liability as to the portion of the underpayment that represents an additional tax for early withdrawal under section 72(t).

## Discussion

### A. Jurisdiction

At trial, there was a question as to whether either Mr. Jennings or Ms. Jennings had signed the petition. Both Mr. and Ms. Jennings claimed not to have signed the petition. Handwriting samples were taken in open court from both individuals by the presiding Judge and compared with the purported signatures on the petition. Based upon the testimony of the parties and the handwriting samples, we find that Ms. Jennings did in fact sign the petition, but Mr. Jennings did not. There is no evidence that Mr. Jennings permitted any other party to sign on his behalf, and at trial Mr. Jennings refused to accept the petition as filed. As a result, the Court lacks jurisdiction over Mr. Jennings. Because the Court retains

jurisdiction over Ms. Jennings, we may now proceed to the substance of her argument. For purposes of convenience, Ms. Jennings will hereafter be referred to as petitioner.

B. Relief From Joint and Several Liability

Petitioner argues that she should not be held responsible for $1,699 of the underpayment because that amount represents an additional tax on Mr. Jennings's early withdrawal from a section 401(k) plan. Petitioner contends that she did not know of the distribution to Mr. Jennings when the distribution was made and that she received no benefit from the distribution.

Section 6015 provides that an individual may seek relief from joint and several liability on a joint income tax return provided that individual meets the requirements of section 6015(b) or (c). In addition, section 6015(f) provides that even if the taxpayer does not qualify under section 6015(b) or (c), the taxpayer may be relieved of liability in the event the Secretary determines that it is "inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)".

Petitioner does not qualify for relief under section 6015(b). Section 6015(b)(1)(C) requires that the taxpayer establish that she had no reason to know of the understatement. Even if we accept petitioner's statement that she did not know of the section 401(k) distribution at the time it was made, the

distribution was reported on petitioner's original tax return, and petitioner signed the return. Petitioner cannot rely solely on ignorance of the tax consequences of an item giving rise to a deficiency to satisfy her burden under section 6015(b)(1)(C). See Price v. Commissioner, 887 F.2d 959, 964 (9th Cir. 1989); Hopkins v. Commissioner, 121 T.C. 73, 78 n.11 (2003). Thus, petitioner had reason to know of the understatement. She cannot satisfy the conditions of section 6015(b).

Furthermore, petitioner cannot qualify under section 6015(c). Section 6015(c)(3)(A) requires petitioner, at the time she applied for relief, to be either: (1) Divorced from the individual with whom she filed the joint return; (2) legally separated from that individual; or (3) not a member of the same household as that individual for any time during the 12-month period before the application is made. At the time petitioner applied for relief, she was neither divorced nor legally separated from Mr. Jennings, and the two lived together. Therefore, petitioner cannot satisfy the conditions of section 6015(c).

Having failed to qualify for relief from joint and several liability under section 6015(b) or (c), petitioner may only qualify for relief, if at all, under section 6015(f). Section 6015(f) allows relief from joint and several liability if, "taking into account all the facts and circumstances, it is

inequitable to hold the individual liable". Pursuant to respondent's discretionary authority to grant relief under section 6015(f), the Commissioner has prescribed procedures, set forth in Rev. Proc. 2003-61, 2003-2 C.B. 296, which the Commissioner applies in determining whether a spouse is eligible for relief.

As a threshold matter, Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, lists seven conditions that must be met to be eligible to submit a request for equitable relief. Of these seven conditions, respondent concedes that petitioner has met the first three. The fourth condition is met if there has been no fraudulent transfer of assets between the spouses. There is no evidence to suggest that any fraudulent transfer between the spouses has occurred here. The fifth condition is met if there has been no transfer of "disqualified assets" between the spouses, which under section 6015(c)(4)(B) are assets transferred for the purpose of the avoidance of tax. There is no indication that any such transfer took place. The sixth condition is met if the requesting spouse did not file the return with fraudulent intent, which petitioner did not. The seventh condition is met if the item of income that gave rise to the liability is attributable to the nonrequesting spouse. Here, the section 401(k) withdrawal giving rise to the section 72(t) additional tax at issue was made by Mr. Jennings at his sole request. That item

of income is attributable to Mr. Jennings. Therefore, petitioner has met all seven of the threshold conditions. From there, we must determine whether petitioner is entitled to equitable relief.

Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, creates a safe harbor for those seeking equitable relief. If the liability reported on the return is unpaid, as it is here, and the requesting spouse's situation meets all of the circumstances listed, equitable relief will ordinarily be granted. If not, the requesting spouse may only qualify for relief on the basis of a balancing of factors listed in Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298.

The first condition of the safe harbor is the same condition of section 6015(c): The requesting spouse must have been divorced or legally separated from the nonrequesting spouse, or the spouses have lived apart for more than 12 months. As discussed above, that condition is not met here. Thus, petitioner does not qualify for the safe harbor, and must submit to the balancing of factors listed in Rev. Proc. 2003-61, sec. 4.03.

Rev. Proc. 2003-61, sec. 4.03, lists six factors  the Commissioner considers in determining whether to grant equitable relief:  (1) Marital status; (2) economic hardship; (3) knowledge or reason to know; (4) nonrequesting spouse's legal obligation;

(5) significant benefit; and (6) compliance with income tax laws. In addition to these, there are two additional factors that, when present, weigh in favor of relief, but do not weigh against relief when not present. These two factors are: (1) Whether the nonrequesting spouse abused the requesting spouse; and (2) whether the requesting spouse was in poor mental or physical health at the time the return was signed or at the time that spouse requested relief. We will discuss each of these factors in turn to determine whether respondent abused his discretion in denying petitioner's request for relief from joint and several liability.

First, the marital status factor asks whether the requesting spouse is divorced or separated from the nonrequesting spouse. At the time the request was filed, petitioner was neither divorced nor separated from Mr. Jennings. They are now living apart and are in the process of obtaining a divorce. Respondent concedes that this factor weighs in favor of granting relief.

Second, the economic hardship factor asks whether the requesting spouse will suffer economic hardship if she must pay the liability. The issue is whether the requesting spouse will be able to pay her reasonable living expenses if relief is not granted. See Alt v. Commissioner, 119 T.C. 306, 314-315 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004); sec. 301.6343-1(b)(4), Proced. & Admin. Regs. Petitioner has not alleged that paying

this liability will result in economic hardship, and she has not provided any information about her current living expenses that would allow us to determine whether she would suffer economic hardship. This factor weighs against relief.

Third, the knowledge factor asks whether the requesting spouse did not know and had no reason to know that the non-requesting spouse would not pay the income tax liability. Consideration is given to the requesting spouse's level of education, deceit on the part of the nonrequesting spouse, and the requesting spouse's involvement in household financial matters and financial expertise, and any lavish or unusual expenditures compared to past spending levels. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(C), 2003-2 C.B. at 298. Petitioner amended her return to reflect the existence of the section 72(t) additional tax and made little effort to see that Mr. Jennings paid that portion of the deficiency. Petitioner and Mr. Jennings disagree as to whether Mr. Jennings orally agreed to pay this liability. Although this oral agreement required petitioner to satisfy the remaining portion of the liability, she has not done so, which shows either that the agreement never existed or that neither party considered it to have any binding effect. In any case, we do not need to accept petitioner's self-serving

statement on this score. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). As a result, this factor weighs against granting relief.

Fourth, the legal obligation factor asks whether the non-requesting spouse has a legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement. No such agreement exists, and so neither party has a legal obligation to satisfy the liability. This factor is neutral.

Fifth, the significant benefit factor asks whether the requesting spouse received significant benefit from the unpaid income tax liability or item giving rise to the deficiency. Significant benefit is defined as any benefit in excess of normal support. Sec. 1.6015-2(d), Income Tax Regs. Mr. Jennings spent $12,000 of the section 401(k) withdrawal to purchase an automobile. However, Mr. Jennings subsequently returned the vehicle to the dealership and received in return $9,800. Petitioner acknowledged that an undetermined amount of this money was spent for a new floor and several appliances for the kitchen of the Jenningses' house, as well as new steps and walls for other areas of the home. The kitchen floor was replaced due to water damage caused by Mr. Jennings. Petitioner contends that this work was done in a year other than 2003, but petitioner offers no tangible evidence as to the timing and amount of these transactions. Without information regarding the scope and

expense of this renovation, we cannot determine whether the renovation represents a significant benefit or ordinary support. Respondent determined that this work represented a significant benefit, and petitioner has given us no reason to question that determination. This factor weighs against relief.

Sixth, the compliance factor asks whether the requesting spouse has made a good faith effort to comply with the income tax laws in the years following the year to which the request for relief relates. Petitioner did not file a return for her 2006 tax year until 2008 and did not file for any extension of time to file the return. This does not represent a good faith effort to comply with the income tax laws. This factor weighs against relief.

Next, we turn to the two factors that, if present, weigh in favor of relief but do not weigh against relief if not present. Petitioner did not allege either that she was the victim of abuse or was in poor health at the time the return was filed or the time the request was made. In a question posed to Mr. Jennings, petitioner asserted that a protection from abuse order had been filed against Mr. Jennings at the time of the disbursement, but she did not present evidence that such order existed, and she did not offer sworn testimony that would show that she was the victim of abuse. These two factors do not enter into the consideration of this case.

Of the first six factors, only one weighs in favor of relief, while the rest either weigh against relief or are neutral.  As a result, we hold that petitioner has not met her burden to show that she is entitled to relief from joint and several liability.  We have considered all the arguments made by the parties, and to the extent not addressed in this opinion, we conclude that they are moot, irrelevant, or without merit.  In accordance with the foregoing,

<u>An appropriate order</u>

<u>and decision will be entered</u>.