T.C. Memo. 2019-143

UNITED STATES TAX COURT

FUMITAKE NISHI AND SACHIYO NISHI, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6936-17.                          Filed October 23, 2019.

Eric William Johnson, for petitioners.

Beth A. Nunnink, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, Judge:  Respondent determined deficiencies in petitioners'

Federal income tax and section 6662(a) accuracy-related penalties for 2011, 2012,

and 2013 (years in issue).  Unless otherwise indicated, all section references are to

the Internal Revenue Code in effect at all relevant times, and all Rule references

are to the Tax Court Rules of Practice and Procedure.  After concessions the sole

[*2] issue for our consideration is whether petitioner wife is entitled to innocent spouse relief for the years in issue pursuant to section 6015(b) or (f).

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Minnesota when they timely filed their petition.

Petitioners met in Japan and married in 1991. Their daughters were born in 1991 and 1993 in Japan. At all relevant times petitioners were married and living in the same household. They filed joint Federal tax returns for tax years 2005-17.

Petitioner husband was born in China, and petitioner wife was born in Japan. While in Japan, petitioner wife attended a university and later worked for a law firm. Petitioner husband moved to the United States in 2001. Petitioner wife and their daughters moved to the United States in 2004 or 2005.

During the years in issue petitioner husband worked for the Tile Shop, LLC (Tile Shop), a publicly traded company that provides home tile and decor through retail locations throughout the United States. While working for the Tile Shop, petitioner husband traveled extensively to China and other countries to source materials. Petitioner husband's wages from the Tile Shop ranged between approximately $73,000 and $84,000 per year during the years in issue.

**[*3]**  In December 2013 the Tile Shop discovered that petitioner husband had not disclosed a conflict of interest related to his own business interests in China.  He benefited from business deals with the Tile Shop's vendors through his Chinese business interests.  Subsequently, his employment with the Tile Shop ended.

Petitioners maintained joint and separate bank accounts.  Petitioner husband deposited his income from the Tile Shop into his separate bank account and petitioners' joint checking and savings accounts.  He deposited the income from his Chinese business interests into both his separate Chinese and U.S. bank accounts and petitioners' joint checking account.  For example, between September and October 2011, $220,455 was deposited into petitioners' joint checking account, some of which was transferred from petitioner husband's Chinese bank accounts.

Petitioner husband handled the family's financial matters.  Petitioner wife took care of the family home and made household purchases.  They did not discuss a monthly budget nor have a budget which they followed for household expenses, including expenses for their daughters.

Although petitioner wife did not work outside the home once she moved to the United States, she maintained a separate bank account.  She used her separate bank account, petitioners' joint checking account, and petitioners' joint credit

[*4] cards to pay for household expenses and family needs. At the end of 2012 petitioner wife had six certificates of deposit totaling $37,477. Petitioner wife had access to but did not review all the bank statements that she received, and she had difficulty understanding details of financial documents because of the language barrier.

In 2011 a total of $228,455 was deposited into petitioners' joint checking account. According to bank statements for this account petitioners spent approximately $445,000 on family expenses during the years in issue. For example, in November 2012 petitioners purchased a new vehicle for $41,000 and paid for it with a check drawn from their joint checking account.

In 2007 petitioners jointly purchased their house in Minnesota for $400,000. The mortgage on the property was approximately $320,000. On February 7, 2012, petitioner husband paid $193,453 to satisfy the balance of the mortgage, and petitioner wife was aware of this payment.

Petitioner wife was surprised to learn the reason for petitioner husband's dismissal from the Tile Shop. She temporarily returned to Japan with their daughters and contemplated divorce, but she returned to the United States. On February 6, 2014, petitioner wife withdrew $200,000 from petitioners' joint

[*5] checking account and had a cashier's check made out to the Tile Shop in an effort to return money to the Tile Shop.

Petitioner husband prepared petitioners' timely filed joint Federal tax returns for the years in issue. Petitioner wife signed each return. Petitioners' 2011 Federal tax return was signed on February 23, 2012. Petitioners submitted an amended Federal tax return for 2012 on July 28, 2014, which was accepted and processed. The amended return included additional income of $37,696 attributed to earnings of foreign corporations. Their 2013 Federal tax return was filed on October 1, 2014. Petitioner wife signed the 2012 amended Federal tax return and the 2013 Federal tax return after learning of the reasons for petitioner husband's dismissal from the Tile Shop.

Before trial the parties filed a joint stipulation of settled issues, agreeing that petitioners had unreported income of $424,015, $384,882, and $687,206 for 2011-13, respectively, and that they are liable for section 6662(a) accuracy-related penalties for the years in issue. The unreported income was attributable to petitioner husband's Chinese business dealings.[1]

---

[1]The parties further agreed that petitioners were entitled to a net operating loss carryback of $19,867 for 2012, which is not reflected in the agreed-upon unreported income amounts.

**[*6]**                                   OPINION

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making this election, each spouse is jointly and severally liable for the entire tax due for that taxable year. Sec. 6013(d)(3). Section 6015 provides a requesting spouse with three alternatives for relief from joint and several liability: (1) full or partial relief under subsection (b), (2) proportionate relief under subsection (c), or (3) if relief is not available under subsection (b) or (c), equitable relief under subsection (f). Except as otherwise provided in section 6015, the taxpayer bears the burden of proving that he or she is entitled to section 6015 relief. Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004). Petitioner wife is ineligible to elect relief under section 6015(c) because petitioners are still married and continue to live in the same household. See sec. 6015(c)(3)(A).

Section 6015(b)

To be entitled to relief under section 6015(b)(1) the requesting spouse must satisfy all of the following requirements: (A) a joint return has been made for the taxable year; (B) on such return there is an understatement of tax attributable to erroneous items of the nonrequesting spouse; (C) the requesting spouse did not know and had no reason to know of the understatement when the return was

[*7] signed; (D) taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for that year's deficiency in tax attributable to such understatement; and (E) the requesting spouse timely elects relief under section 6015(b). Sec. 6015(b)(1); see Alt v. Commissioner, 119 T.C. at 313. Respondent contends that petitioner wife does not meet the requirements of section 6015(b)(1)(C) and (D).

Respondent argues that petitioner wife is ineligible for relief under section 6015(b)(1)(C) because she should have known that their joint Federal tax returns understated her husband's income. Section 6015(b)(1)(C) requires that in signing the return, the individual seeking relief did not know and had no reason to know of the understatement. A requesting spouse has knowledge or reason to know of an understatement if he or she actually knew of the understatement or if a reasonable person in similar circumstances, when he or she signed the return, could be expected to know that the return contained an understatement. Hopkins v. Commissioner, 121 T.C. 73, 77 (2003); sec. 1.6015-2(c), Income Tax Regs.

Consequently, a requesting spouse has a duty of inquiry with respect to the Federal tax return filed. Butler v. Commissioner, 114 T.C. 276, 283-284 (2000), abrogated on other grounds by Porter v. Commissioner, 132 T.C. 203 (2009). The duty of inquiry is subjective, focusing on the individual seeking relief. Butler v.

[*8] <u>Commissioner</u>, 114 T.C. at 284. Factors to consider are: (1) the requesting spouse's level of education; (2) the requesting spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances. <u>Id.</u>

Petitioner wife had a duty to inquire given the amount of petitioner husband's wages in contrast to their spending. Between September and October 2011, $220,455 was deposited into petitioners' joint checking account. Even though petitioner wife testified that she had difficulty understanding financial documents and speaking English, she had her own bank account, certificates of deposit, and authority to write checks for their joint account. She further testified that she was capable of understanding bank statements when she opened them.

During 2012 petitioner wife was aware that petitioner husband had paid fully the balance of their mortgage, within five years of petitioners' purchasing their home. If she had reviewed the bank statements, she would have known that income in addition to her husband's wages was being deposited and that their spending exceeded his wages.

**[\*9]** Petitioners did not discuss a budget, and petitioner wife was unaware of any monthly spending limits. She used her separate checking account, petitioners' joint checking account, and their credit cards to make monthly household and family purchases. Although petitioners testified that she was frugal in her spending habits, a reasonable person in similar circumstances would have inquired how they could afford their yearly household expenses. When petitioner wife signed their joint Federal tax return for 2011, she had reason to know that petitioner husband had understated his income.

Petitioner wife testified that she did not know about her husband's Chinese business dealings or that he had income from sources other than the Tile Shop until the end of 2013. In February 2014 she signed a $200,000 check to the Tile Shop, more than seven months before she signed petitioners' joint Federal tax return for 2013. She signed their 2012 amended Federal tax return after becoming aware of her husband's Chinese business dealings. She had knowledge of the unreported income when she signed the 2013 Federal tax return and the 2012 amended Federal tax return.

Section 6015 does not protect a spouse who turns a blind eye to facts readily available to her. Charlton v. Commissioner, 114 T.C. 333, 340 (2000). We conclude that petitioner wife is not entitled to relief under section 6015(b) since

**[\*10]** she had reason to know of the understatements. Even if we concluded that petitioner wife did not have knowledge or reason to know of the understatements, she would not be eligible for relief under section 6015(b)(1) because she does not meet the requirement of section 6015(b)(1)(D). The factors that we consider in determining whether it would be inequitable to hold petitioner wife liable for the deficiency in tax attributable to the understatements for purposes of section 6015(b) are the same factors that we consider in determining inequity for purposes of section 6015(f). See Alt v. Commissioner, 119 T.C. at 316; Jones v. Commissioner, T.C. Memo. 2010-112, slip op. at 15.

Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. 397, 400-403, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296, lists the following nonexclusive factors that the Commissioner takes into account when determining whether to grant equitable relief under section 6015(f): (1) marital status; (2) economic hardship; (3) in the case of understatement, knowledge or reason to know of the item giving rise to the understatement; (4) legal obligation; (5) significant benefit; (6) compliance with tax laws; and (7) mental or physical health. Looking at the facts and circumstances, we conclude that it would not be inequitable to deny petitioner wife relief.

**[*11]** We previously concluded that she had reason to know of the understatements. The remaining factors are either neutral or weigh against relief. Marital status is neutral because petitioners are married and live in the same household. Legal obligation is similarly neutral because petitioners are not separated or divorced. See id. sec. 4.03(2)(d), 2013-43 I.R.B. at 402. Petitioner wife provided no evidence of economic hardship or poor mental or physical health.

Petitioner wife benefited from the understatements of income. This factor weighs against relief. During the years in issue petitioners lived beyond petitioner husband's Tile Shop salary. Income from his Chinese business interests allowed petitioners to pay off the mortgage on their home and purchase a new vehicle with cash during 2012. We find that petitioner wife did not meet her burden to show that she is entitled to equitable relief. See Rule 142(a).

Section 6015(f)

Section 6015(f) provides an alternative means of relief for a requesting spouse who does not otherwise qualify under section 6015(b) or (c). Sec. 6015(f)(1); Porter v. Commissioner, 132 T.C. at 206. Section 6015(f)(1) permits relief from joint and several liability if it would be inequitable to hold the requesting spouse liable for any unpaid tax or any deficiency. Under section

[*12] 6015(f) the Secretary may grant equitable relief to a requesting spouse on the basis of the facts and circumstances.

The Commissioner issued Rev. Proc. 2013-34, supra, to provide guidance for determining whether a taxpayer is entitled to equitable relief from joint and several liability. While the Court may consider the guidance set forth in Rev. Prov. 2013-34, supra, we are not bound by it; our determination ultimately rests on an evaluation of all the facts and circumstances. See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Johnson v. Commissioner, T.C. Memo. 2014-240, at *10.

Rev. Proc. 2013-34, supra, provides a three-step analysis for evaluating a request for equitable relief. The first step consists of seven threshold conditions that must be met. Id. sec. 4.01, 2013-43 I.R.B. at 399. Respondent concedes that petitioner wife meets the seven threshold conditions. The second step of the analysis provides three conditions that must be met to qualify for a streamlined determination of relief under section 6015(f). Id. sec. 4.02, 2013-43 I.R.B. at 400. The first condition is that the requesting spouse is no longer married to the nonrequesting spouse. Id. sec. 4.02(1). Since petitioners are still married, petitioner wife does not qualify for a streamlined determination.

**[*13]** A third step is available if the requesting spouse satisfies the threshold conditions but fails to satisfy the conditions for a streamlined determination. A requesting spouse may still be eligible for equitable relief under section 6015(f) if, taking into account all of the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the unpaid tax or deficiency. Id. sec. 4.03, 2013-43 I.R.B. at 400. We previously considered the factors that respondent considered when taking into account whether to grant equitable relief in our analysis of section 6015(b)(1)(D) and held there that petitioner wife is not entitled to equitable relief. For the same reasons, petitioner wife is not entitled to equitable relief pursuant to section 6015(f).

We have considered all arguments made, and to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

under Rule 155.
